United States Court of Appeals,

Fifth Circuit.

No. 94-40171.

LLOYDS OF LONDON, Plaintiff-Counter-Defendant-Appellee,

v.

TRANSCONTINENTAL GAS PIPE LINE CORPORATION, Defendant-Counter-Claimant-Appellant.

Nov. 17, 1994.

Appeal from the United States District Court for the Western District of Louisiana.

Before JOHNSON, HIGGINBOTHAM and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

At issue in this case is the applicability of the Louisiana Oilfield Anti-Indemnity Act (the "LOAIA") to a contract involving sandblasting and painting work on an interstate gas transmission pipeline company's pipelines and platforms in the Gulf of Mexico. Transcontinental Pipe Line Corporation ("Transco") appeals the district court's grant of summary judgment in favor of Lloyds of London. Because we conclude that the summary judgment evidence in the record is insufficient to support the summary judgment, we vacate the judgment and remand.

I.

Harrington Enterprises, Inc. ("Harrington") is a Louisiana contractor engaged in providing sandblasting and painting services in the offshore oilfields. Transco is a Texas corporation which owns and operates natural gas pipelines throughout the United States, including pipelines serving various producing platforms in

1

the Gulf of Mexico off the Louisiana and Texas coasts. Transco purchases gas from producers and transports it through its pipelines for sale to eventual customers. Transco also transports gas for others through its pipelines for a fee. Transco does not produce any oil or gas.

In June 1987, Transco and Harrington entered into a contract providing for Harrington to perform sandblasting and painting services on Transco's offshore pipelines and equipment off the Louisiana and Texas coasts. Specifically, the contract called for Harrington to furnish:

> Labor and equipment for sandblasting and painting platform structures and platform piping [and] also to furnish labor and equipment to perform various operations and maintenance functions as directed by [Transco's] authorized representative.

The contract also called for Harrington "to protect, indemnify and save [Transco] harmless from and against all claims, demands, and causes of action of every kind and character arising in favor of [Harrington's] employees" and to list Transco as an additional assured in a comprehensive general liability policy issued to Harrington by a consortium of insurance companies (hereinafter "Lloyds").

This action arose from a personal injury suffered by Carl Fontenot, a Harrington employee. Fontenot allegedly fell from the top of a sandpot to the deck of a boat while sandblasting and painting a Transco riser located on a structure in Block 133 of the

Brazos area.[1]  The boat was tied to the 133 "A" platform, which at that time was owned and operated by Cities Service Oil Co., Inc. ("Cities").  Cities owned and operated seven producing wells on 133 "A" that provided gas to the Transco pipelines passing over the platform.

On the 133 "A" platform, Transco owned and maintained three incoming pipelines, a meter station, and two outgoing pipelines which tied into the Transco Central Texas lateral pipeline.  The three incoming pipelines carried gas from fifty-six wells upstream of the platform.  The gas from these fifty-six wells had been commingled and carried through the Transco pipeline to 133 "A," where it was further commingled with the gas from the seven Cities wells.  Before the gas from the Cities wells was commingled with the upstream gas, it was measured through Transco's meter located on the 133 "A" platform.  Ownership of the gas changed hands at the meter when the gas was measured.  The gas was commingled with the gas from the upstream wells immediately after it passed through the meter.

Transco demanded that Harrington and its insurer defend and indemnify Transco for the injuries.  Lloyds denied Transco's claim for defense and indemnity and filed this suit for declaratory judgment in the district court, alleging that the LOAIA rendered the indemnity provisions null and void.  Transco responded with a

---

[1]Although Fontenot's injury occurred adjacent to a platform off the Texas coast, both parties and the district court consistently applied Louisiana law and never questioned its applicability.  See *Johnson v. Amoco Production Co.,* 5 F.3d 949, 951 n. 2 (5th Cir.1993).

reconventional demand against Lloyds, seeking a defense to and indemnity from Fontenot's action. Both parties then filed cross-motions for summary judgment.

In accordance with 28 U.S.C. § 636(B)(1)(b), the district court referred the motions to a magistrate judge for review, report and recommendation. After thorough review and analysis, the magistrate judge concluded that the LOAIA applied and that the Transco indemnity provision was unenforceable. Upon de novo review, the district court accepted the magistrate judge's recommendation and granted Lloyds' motion for summary judgment and denied Transco's motion, 847 F.Supp. 48. Transco timely appealed.

## II.

This court reviews a grant of summary judgment under the same standard that guided the district court. *Walker v. Sears, Roebuck & Co.,* 853 F.2d 355, 358 (5th Cir.1988). The sole issue to be resolved is the applicability of the LOAIA to the indemnity provision contained in the contract between Harrington and Transco. The Louisiana legislature enacted the LOAIA to declare a large class of hold harmless/indemnity agreements unenforceable. It reasoned "that an inequity is foisted on certain contractors and their employees by the defense or indemnity provisions, either or both, contained in some agreements pertaining to wells for oil, gas, or water, or drilling for minerals." La.Rev.Stat.Ann. § 9:2780(A) (West 1991). The LOAIA defines "agreement" as "any agreement or understanding, written or oral, concerning any operations related to the exploration, development, production, or

4

transportation of oil, gas, or water, or drilling for minerals."
Id. § 9:2780(C).

This court considered the application of the LOAIA to transmission companies in *Transcontinental Gas Pipe Line Corp. v. Transportation Ins. Co.,* 953 F.2d 985 (5th Cir.1992). That case also involved an employee who was injured while performing sandblasting and painting work pursuant to a contract on an offshore junction platform owned by Transco. Although it rejected Transco's argument that the LOAIA did not apply to transmission companies per se, this court refused to read the statute so broadly as to cover every agreement arising from or connected with the transportation of gas and oil. *Id.* at 992. Instead, the court interpreted the LOAIA to apply only to the limited subset of those agreements related to the transportation of gas that pertain to a well. *Id.*

The *Transco* court established a two-step process for determining the applicability of the LOAIA. First, as a threshold matter, the contract must "pertain to a well." *Id.* at 991. Second, the contract must be related to the exploration, development, production or transportation of oil, gas or water. *Id.* The sole dispute in this case is whether the contract "pertains to a well." We concluded in *Transco* that the determination of "whether a contract pertains to a well ... requires a fact intensive case-by-case analysis." *Id.* at 994. The focus of this inquiry is the location of the work required by the contract. The LOAIA is not applicable if the work required by the

5

contract is performed on gas transmission equipment at "a reasonably determinable point at which the gas can no longer be identified with a particular well, or is so fundamentally changed in processing, commingling, or preparing it for distribution to its ultimate end user, that the gas no longer "pertains to a well.' " *Id.* The *Transco* court listed ten non-inclusive factors relevant to this determination.[2]

---

[2]Those factors are:

> (1) whether the structures or facilities to which the contract applies or with which it is associated, e.g., production platforms, pipelines, junction platforms, etc., are part of an in-field gas gathering system;
>
> (2) what is the geographical location of the facility or system relative to the well or wells;
>
> (3) whether the structure in question is a pipeline or is closely involved with a pipeline;
>
> (4) if so, whether that line picks up gas from a single well or a single production platform or instead carries commingled gas originating from different wells or production facilities;
>
> (5) whether the pipeline is a main transmission or trunk line;
>
> (6) what is the location of the facility or structure relative to compressors, regulating stations, processing facilities or the like;
>
> (7) what is the purpose or function of the facility in question;
>
> (8) what if any facilities or processes intervene between the wellhead and the structure or facility in question, e.g., "heater treaters," compressor facilities, separators, gauging installations, treatment plants, etc.;
>
> (9) who owns and operates the facility or structure in question, and who owns and operates the well or wells that produce the gas in question;

Applying *Transco,* the district court identified the meter on the 133 "A" platform as the last reasonably determinable point before the gas became unrecognizable to the wells on the platform. The district court held that because the contract envisioned that Harrington would perform work on the meter, the contract pertained to a well. Transco argues that the district court erred on a number of grounds.

Transco first argues that the court improperly focused on the site of the accident, the 133 "A" platform, in determining that the contract pertained to a well. Transco contends that by limiting its analysis to one platform, the court did not consider the entire contract, which pertained to numerous facilities in two states.

The district court's focus on the 133 "A" platform was not improper. The district court was charged with determining whether the contract—which called in broad general terms for Harrington to perform work on platform structures and piping—pertained to a well. The platform on which Fontenot was working when he was injured was a logical beginning point. We cannot fault the district court's reasoning that if Harrington's work on the 133 "A" platform pertained to a well, the LOAIA was triggered. The court did not need to look further to see if the contract pertained to any other wells. *Transco* instructs us to examine the facts to see if the

(10) and any number of other details affecting the functional and geographic nexus between "a well" and the structure or facility that is the object of the agreement under scrutiny.

*Id.* at 995.

7

contract envisioned work which pertained to any well. The fact that the contract also may pertain to numerous other wells or to objects other than wells is of no consequence.

Transco next challenges the district court's determination that the meter was the last reasonably determinable point before the gas could no longer be identified with a particular well. However, an application of the *Transco* factors supports this determination. Under Transco, the seven wells on the 133 "A" platform constituted one well for purposes of the LOAIA. See *id.* at 995 n. 40; see also *Nerco Oil & Gas, Inc. v. M.R. Friday, Inc.,* 816 F.Supp. 429, 431 (W.D. La.1993). These wells fed gas through piping owned by Cities into the Transco meter. The gas was not treated before reaching the meter, except to bring it up to pipeline standards. The purpose of the meter was to measure the gas directly from producing wells on the 133 "A" platform before it entered the transmission pipeline. This gas was not commingled with gas from other wells until after it passed through the meter. Thus, there was a sufficient functional and geographical nexus between the producing wells on 133 "A" and the meter.

Finally, Transco contends that even if we agree with the district court's focus on the 133 "A" meter, the summary judgment evidence does not support the conclusion that the contract contemplated that work would be performed on the meter. Meters are not referred to in the contract. The district court therefore had the task of determining from the summary judgment evidence whether the parties contemplated that Harrington would sandblast or paint

8

the meter on platform 133 "A."  The sole evidence relating to work on the 133 "A" meter is the affidavit of Winfard Terme, the District Manager of Transco.  According to Mr. Terme, the meter was housed inside a small building on the platform and would ordinarily be hand painted by a Transco employee.  Mr. Terme also examined the invoices from the Harrington job and concluded that no work had been done on the 133 "A" meter.

The district court concluded that the absence of work by Harrington on the 133 "A" meter was insufficient to show that the contract did not envision that work could be performed on the meter.  The court interpreted the contract's requirement of "sandblasting and painting platform structures and platform piping" to include the meter, since 133 "A" is a platform structure and does contain a meter.[3]

We do not read the contract as calling for Harrington to sandblast and paint all structures and piping on the platforms.  To the contrary, Harrington could perform only the work it was directed to perform by Transco.  Transco produced summary judgment evidence that Harrington did not work on the platform 133 "A" meter and ordinarily would not do so.  Transco therefore successfully established by summary judgment evidence that the contract did not contemplate work on the meter.  Because this determination was

_____

[3]At oral argument, counsel for Lloyds suggested that the contract also envisioned that work would be performed on pipes upstream of the meter—i.e., on the piping which transported gas from the Cities wells to the meter.  However, that piping was owned by Cities and thus was not covered by the Transco contract.

9

critical to the district court's conclusion that Harrington's work pertained to a well, we must vacate the summary judgment and remand this case for further proceedings.

III.

For the foregoing reasons, we vacate the district court's entry of summary judgment for Lloyds and remand this case to the district court for further proceedings consistent with this opinion.

VACATED AND REMANDED.