LLOYDS OF LONDON, Plaintiff–
Counter–Defendant–
Appellant,

v.

TRANSCONTINENTAL GAS PIPE LINE
CORPORATION, Defendant–Counter–
Claimant–Appellee.

No. 95–31256.

United States Court of Appeals,
Fifth Circuit.

Dec. 12, 1996.

426

Edward S. Johnson, Salvador A. Pusateri, Johnson, Johnson, Barrios & Yacoubian, New Orleans, LA, for Lloyds of London.

Gary A. Bezet, Barrye Panepinto Miyagi, Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, Baton Rouge, LA, for Transcontinental Gas Pipe Line Corporation.

Before REYNALDO G. GARZA, DeMOSS and PARKER, Circuit Judges.

PARKER, Circuit Judge:

This case stems from a 1987 contract for sandblasting and painting services in offshore oilfields between Harrington Enterprises, Inc. ("Harrington"), a sandblasting and painting services contractor, and Transcontinental Gas Pipe Line Corporation ("Transco"), a corporation that owns and operates natural gas pipelines. For the second time, this case presents us with a question regarding the applicability of the Louisiana Oilfield Anti–Indemnity Act ("LOAIA") and its prohibition on indemnification provisions to this particular agreement.[1] Pursuant to our holding in *Lloyds I*, if this contract concerned work either at a particular meter, the 133A meter, or upstream of the 133A meter, the LOAIA applied and voided the contract's indemnity provision. In *Lloyds I*, we focused on whether or not the contract concerned work on the 133A meter. Now, we focus on whether or not the contract concerned work upstream of the 133A meter. Lloyds appeals the district court's judgment in favor of Transco, contending three sources of error: (1) that the district court erred by misstating our previous holding, (2) that the district court erred in finding that Lloyds submitted no evidence that the contract covered work upstream of the 133A meter, and (3) that the district court should not have assigned Lloyds the burden of proof. Because the district court clearly erred as a matter of law in its interpretation of the contract, we reverse its judgment.

---

1. We previously heard Transco's appeal of the district court's entry of summary judgment in favor of Lloyds in *Lloyds of London v. Transconti-nental Gas Pipe Line Corp.*, 38 F.3d 193 (5th Cir.1994) ("*Lloyds I*").

*Factual History*

Harrington was hired by Transco in 1987 to perform sandblasting and painting on Transco's natural gas pipelines and equipment located offshore of the Louisiana and Texas coasts. Harrington and Transco entered into a contract which called for Harrington to furnish:

Labor and equipment for sandblasting and painting platform structures and platform piping [and] also to furnish labor and equipment to perform various operations and maintenance functions as directed by [Transco's] authorized representative.

The contract also contained an indemnity clause that called for Harrington "to protect, indemnify and save [Transco] harmless from and against all claims, demands, and causes of action of every kind and character arising in favor of [Harrington's] employees" and to list Transco as an additional assured in a comprehensive general liability policy issued to Harrington by Lloyds.

This action arose from injuries suffered by one of Harrington's employees in 1987 who allegedly fell from the top of a sandpot while sandblasting and painting a Transco riser located on a structure in Block 133 of the Brazos area off the coast of Texas. The employee was on a boat at the time which was tied to the 133A platform. On the 133A platform, Transco owned and maintained three incoming pipelines, a meter station, a meter, and two outgoing pipelines.

*Prior Proceedings*

Transco demanded that Harrington and its insurer defend and indemnify Transco for the Harrington employee's injuries. Lloyds denied Transco's claim for defense and indemnity and filed this suit for declaratory judgment in district court, alleging that the LOAIA rendered the indemnity provisions null and void. Transco responded with a reconventional demand against Lloyds, seeking a defense to and indemnity from the injured employee's action. Both parties then filed cross motions for summary judgment. The district court granted Lloyds' motion for summary judgment and denied Transco's motion. *Underwriters at Lloyd's, London v. Transcontinental Gas Pipeline Corp.*, 847 F.Supp. 48 (W.D.La.1994).

Subsequently, Transco filed an appeal to this Court. We disagreed with the district court that there was sufficient evidence to conclude that the contract covered work to be conducted on the 133A meter. Because the contract did not refer specifically to meters, we considered the affidavit of Winfard Treme, Transco's district manager, as the sole summary judgment evidence addressing the actual meter located on the 133A platform. In Treme's affidavit, he explained that the 133A meter was housed inside a small building on the platform and would ordinarily be painted by a Transco employee. Consequently, we found absent evidentiary support that the contract concerned work on the 133A meter, thus rendering insufficient an evidentiary basis for the district court's grant of summary judgment. We vacated the district court's summary judgment and remanded the case for further proceedings consistent with our opinion. *See Lloyds I*, 38 F.3d 193.

Upon remand, the district court ordered the case submitted on briefs and depositions. The district court entered judgment in favor of Transco on October 24, 1995, and issued an accompanying Memorandum Ruling, reasoning that Lloyds failed to carry its burden of proof that the contract contemplated work on the 133A meter. Following the district court judgment, Lloyds filed a motion for a new trial or alternatively to alter judgment in which Lloyds questioned the district court's judgment. The district court denied the motion on November 6, 1995, and issued a second Memorandum Ruling, setting forth additional, alternative reasoning. The district court stated: "Lloyds has not offered evidence that work was specifically done or contemplated on the upstream portion of the 'meter station.' "

Lloyds now appeals the district court's judgment in favor of Transco to this Court.

*DISCUSSION*

Lloyds contests the lower court's judgment on the basis that (1) the district court misstated our holding in *Lloyds I* by requiring that the contract's work be performed or

contemplated *at* the meter, and (2) that the district court erred in finding that Lloyds failed to submit evidence demonstrating that the contract pertained to work upstream of the 133A meter. Lloyds also raises a third issue for the first time on appeal, contending that the district court erred in assigning the burden of proof to Lloyds.

#### A.

Lloyds argues for reversal on the basis that the district court misapprehended our holding in *Lloyds I* in its ruling, requiring that work be performed or contemplated at the 133A meter, rather than either at *or upstream* of the 133A meter. While the district court did articulate such an erroneous reading of *Lloyds I* in its first memorandum opinion,[2] it correctly apprehended our holding in its second memorandum opinion[3] in which it denied Lloyds' motion for a new trial or amended judgment. Thus, we decline to reverse on the basis of the district court's misstatement since the district court articulated the proper legal standard in its second opinion. *See* Fed.R.Civ.P. 61. Federal Rule of Civil Procedure 61 instructs that an error in a ruling shall not be the basis for disturbing a judgment unless the substantial rights of the parties are affected. Given that the district court took the opportunity to correct its statement of our holding, its erroneous misstatement in its first opinion was harmless. *See Barber v. Ruth,* 7 F.3d 636, 641 (7th Cir.1993) ("... a trial court's erroneous rulings may be deemed harmless if the record indicates that the trial court would have rendered the same judgment regardless of the error.").

#### B.

In the previous incarnation of this case, we held that if the contract concerned work either at the 133A meter or upstream of the 133A meter, the contract qualified as "pertaining to a well" under the LOAIA. *See Lloyds I,* 38 F.3d at 197. Transco defends the district court's judgment by claiming that no work in such an area was "contemplated" by the agreement between Harrington and Transco. It contends that the contract only "contemplated" work on an actually directed basis and Lloyds failed to submit evidence that Harrington was actually directed to engage in any work in the area that we previously described as "pertaining to a well," that is, at or upstream from the 133A meter. *See Id.* In making this argument, Transco relies on the language of the contract: "Labor and equipment for sandblasting and painting platform structures and platform piping [and] also to furnish labor and equipment to perform various operations and maintenance functions **as directed by** [Transco's] representative" (emphasis added). Transco argues that Lloyds did not submit supporting evidence of actually directed work upstream of the meter, and so Lloyds appropriately lost at the district court.

This issue is a question of contractual interpretation and not one particular to the LOAIA. The parties' argument centers on whether or not their agreement pertained to the subject it describes, or only to what extrinsic evidence, several years after the work was performed, indicates was the work actually directed. The question posed now is a purely contractual one: the identity of the contract's subject matter.

Transco reads *Lloyds I* incorrectly. It misguidedly focuses its argument on our decision's use of the term "contemplate." Our use of that word was merely to point out that the summary judgment evidence offered no indication that work was either done on the 133A meter or that the contract covered work on the 133A meter. We did not suggest that the contract *must* be interpreted by looking to extrinsic evidence, specifically, as advanced here, evidence of work performed. Consideration of extrinsic evidence requires an initial finding of ambiguity, *Liberty Mutual Ins. Co. v. Pine Bluff Sand & Gravel Co.,*

---

**2.** "Consequently, the only issue that this court must determine to decide the applicability of the LOAIA is whether work *on the 133A meter* was contemplated or envisioned by the contract." *Underwriters at Lloyds, London v. Transcontinental Gas Pipe Line Corp.,* No. CV90–2368, at 4 (W.D.La. Oct. 24, 1995) (emphasis added).

**3.** "Lloyds has not offered evidence that work was specifically done or contemplated *on the upstream portion* of the 'meter station.'" *Underwriters at Lloyds, London v. Transcontinental Gas Pipe Line Corp.,* No. CV90–2368, at 1 (W.D.La. Nov. 6, 1995) (emphasis added).

*Inc.,* 89 F.3d 243, 246 (5th Cir.1996), and we, of course, cannot create an ambiguity where none exists, *Rutgers, State University v. Martin Woodlands Gas Co.,* 974 F.2d 659, 662 (5th Cir.1992).

■ Contract interpretation is a matter of law and reviewed by this Court *de novo. Liberty Mutual Ins. Co.,* 89 F.3d at 246. Whether there is a "plain meaning" to a contract or whether an ambiguity exists is a legal question also subject to *de novo* interpretation. *Clardy Mfg. Co. v. Marine Midland Business Loans, Inc.,* 88 F.3d 347, 352 (5th Cir.1996). Under Louisiana law,[4] a contract is ambiguous when it is uncertain as to the parties' intentions and susceptible to more than one reasonable meaning under the circumstances and after applying established rules of construction. *See Am. Druggists Ins. Co. v. Henry Contracting, Inc.,* 505 So.2d 734, 737 (La.Ct.App.1987).

■ We do not read the painting and sandblasting contract between Transco and Harrington to be ambiguous as to whether or not the subject matter of the contract pertained to work at or upstream of the 133A meter. Where the words of a contract are clear and unambiguous and lead to no absurd consequences, no further inquiry may be made as to the parties' intent. La.Civ.Code art. 2046; *Rutgers,* 974 F.2d at 662. The fact that one party can, in hindsight, create a dispute about the meaning of a contractual provision does not render the provision ambiguous.[5] *Id.* We explained in *Lloyds I* that in order for the contract to pertain to a well and come under the LOAIA, the contract did not have to involve work at the meter, but either at the 133A meter or upstream of the 133A meter. Examining the contract with that issue in mind, we do not find it ambiguous and so have no need to consider actual work performed,[6] as urged by Transco, in order to determine the meaning of the contract. *See Liberty Mutual Ins. Co.,* 89 F.3d at 246 (upon determination of ambiguity, extrinsic evidence may be considered to determine contract's meaning).

### C.

■ Under Louisiana law, we read a contract for its plain meaning. La.Civ.Code art. 2047; *Travelers Ins. Co. v. Liljeberg Enterprises, Inc.,* 7 F.3d 1203, 1207 (5th Cir.1993). The contract at issue incorporates the project's specifications. In item 1(b) of the contract's "General Conditions,"[7] the contract defines the contract as "[t]he agreement entered into between Company [Transco] and Contractor [Harrington] for the performance of the work together with the General Conditions and any drawings, plans and **specifications** relating thereto" (emphasis added). In Transco's Article 10.0, "Painting and Coating Specifications" of "Specifications for Construction of Offshore Facilities," the specification addresses "the surface preparation and coating application to riser and pipe clamps, platform piping, **meter stations,** riser assemblies, valve assemblies and platform structures" (emphasis added). Thus, reading the plain meaning of the contract within its four corners, the contract clearly concerns meter stations.

■ Because "meter station" is a technical term within the oil and gas industry, in order to ascertain its meaning, we turn to the industry's definition of the term. *See* La.Civ. Code. art. 2047 ("Words of art and technical terms must be given their technical meaning when the contract involves a technical matter."); *Capital Bank & Trust Co. v. Equitable Life Assur. Soc. of U.S.,* 542 So.2d 494, 496 (La.1989). *See also Frey v. Amoco Pro-*

---

**4.** Although the Harrington employee's injury occurred adjacent to a platform off the Texas coast, both parties and the district court have consistently applied Louisiana law and its applicability has not been questioned. *See Lloyds I,* 38 F.3d at 195 n. 1.

**5.** We point out that the contract phrase relied on by Transco in its argument, "as directed by," modifies only the second set of services to be performed, the "various operations and maintenance functions," and not the first set of services that are under discussion, "sandblasting and painting platform structures and platform piping."

**6.** Contrary to Transco's assertions, evidence of actual work upstream of the 133A meter was submitted to the district court. John Scarborough, Transco's painting inspector, testified in a deposition that Harrington serviced the piping and meter station on the 133A platform.

**7.** The contract's indemnification clause also appears in the contract's "General Conditions," in item 8.

**430**

duction Co., 943 F.2d 578, 583 (5th Cir.1991) (citing *Kavanaugh v. Berkett,* 407 So.2d 645, 647 (La.1981)) (meaning ascertained according to meaning in profession or art in question). Here, the industry's definition of "meter station" is not in contention. On remand, Transco's district manager, Winfard Treme, provided an explanation in deposition that has been adopted as the working definition by the parties and by the district court. Treme described and drew a schematic of a meter station, defining it as the piping and valves located both upstream and downstream of the 133A meter. Given that the meter station included an area upstream of the 133A meter and that the contract clearly encompassed such a facility, the LOAIA reaches this contract as one "pertaining to a well" and voids its indemnification provision.

### CONCLUSION

For the foregoing reasons, we REVERSE the district court's entry of judgment for Transco and REMAND to the district court with directions to enter judgment in favor of Lloyds.

DeMOSS, Circuit Judge, concurs in the result.