723 So.2d 979 (1998)
Jerry B. RIDINGS
v.
DANOS & CUROLE MARINE CONTRACTORS, INC., et al.
No. 97-CA-2710.
Court of Appeal of Louisiana, Fourth Circuit.
August 12, 1998.
Opinion Denying Rehearing November 10, 1998.
*980 Robert P. McCleskey, Jr., William J. Riviere, New Orleans, for Defendant/Appellee Danos & Curole Marine Contractors, Inc.
Ralph E. Kraft, Trevor D. Hance, Preis, Kraft & Roy, Lafayette, for Defendant/Appellant American Oilfield Divers, Inc.
Before ARMSTRONG, PLOTKIN and JONES, JJ.
ARMSTRONG, Judge.
This case involves cross-claims between the two defendants in a maritime personal injury action. One of the cross-claims is based upon an insurance provision in a contract between the two defendants and the opposing cross-claim is based upon an indemnity provision in that same contract. Upon a motion for summary judgment, the trial court found the insurance provision "primed" the indemnity provision. Consequently, the trial court granted summary judgment in favor of the party claiming under the insurance provision and dismissed the opposing party's claim for indemnity. While we agree with the trial court's interpretation of the contract, we hold that there is a genuine issue of fact as to whether the insurance provision, the indemnity provision or both of these provisions are voided under the Louisiana Oilfield Anti-Indemnity Act, La. R.S. 9:2780 ("LOAIA"), and so we reverse and remand for further proceedings.
The original plaintiff, Jerry Barnett Ridings, was an employee of defendant Danos and Curole Marine Contractors, Inc. ("D & C") and was assigned to work aboard D & C's vessel the ERIC DANOS. Murphy Oil Company had contracted with D & C for the services of the ERIC DANOS in connection with certain offshore operations. Murphy Oil Company also contracted with defendant American Oilfield Divers ("AOD") to provide services in connection with those same operations offshore. AOD's crew and equipment were transported to the ERIC DANOS by another vessel. While AOD's men and equipment were being transferred to the ERIC DANOS, a ladder being handled by AOD personnel allegedly struck Mr. Ridings in the back injuring him.
Mr. Ridings sued D & C and AOD. D & C and AOD filed cross-claims against one another. AOD's cross-claims sought indemnity from D & C based upon reciprocal indemnity provisions contained in a Master Service Contract ("MSC") between D & C and AOD. D & C's cross-claim against AOD sought coverage as an additional insured under AOD's insurance policies based upon a provision of the MSC which obligated AOD to obtain (at its own expense) specified types and amounts of insurance coverage, to have D & C named as an additional assured on the insurance policies and to have the insurers waive any subrogation against D & C. AOD settled with Mr. Ridings and, as part of that settlement, took an assignment of Mr. Ridings' claim against D & C.
D & C filed a motion for summary judgment, seeking dismissal of AOD's cross-claim against D & C, based upon its status as an additional assured on AOD's insurance policies and the waivers of subrogation in those insurance policies. The principal issue addressed by the trial court in deciding that motion for summary judgment was the interaction of the above-discussed insurance provision of the MSC with the reciprocal indemnity provisions of that contract. The insurance provision, in effect, required AOD *981 to purchase liability insurance coverage for D & C. The reciprocal indemnity provisions required (among other things) that D & C indemnify AOD for any claims made by D & C employees (such as Mr. Ridings) against AOD and that AOD indemnify D & C for any claims made by AOD employees against D & C. As to that interaction of those contractual provisions, the trial court held in its written Reasons for Judgment:
It is clear from Tullier v. Halliburton Geophysical Services, Inc. 81 F.3d 552 (5th Cir.1996) that the insurance obligation of American Oilfield Divers primes the contractual defense/indemnity obligation of Danos and Curole. Thus, Danos and Curole is entitled to first dollar protection as an additional insured. Danos and Curole's contractual defense/indemnity obligation to American Oilfield Divers does not become effective until after the insurance protection afforded Danos and Curole has been exhausted.
The trial court's interpretation of the MSC is well supported by the Tullier decision as well as by other decisions. See Klepac v. Champlin Petroleum Co., 842 F.2d 746 (5th Cir. 1988); Woods v. Dravo Basic Materials Co., 887 F.2d 618 (5th Cir.1989); Ogea v. Loffland Brothers Co., 622 F.2d 186 (5th Cir.1980). But see Spell v. N.L. Industries, Inc., 618 So.2d 17 (La.App. 3rd Cir.1993) (minority position and perhaps limited to situation in which contractor failed to obtain additional assured coverage despite contractual obligation to do so).
However, we hold that there is a genuine issue of fact as to whether the provision of the MSC which obligated AOD to purchase additional assured insurance coverage is void under the LOAIA. The most pertinent provisions of that statute state:
A. The legislature finds that an inequity is foisted on certain contractors and their employees by the defense or indemnity provisions, either or both, contained in some agreements pertaining to wells for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, to the extent those provisions apply to death or bodily injury to persons. It is the intent of the legislature by this Section to declare null and void and against public policy of the state of Louisiana any provision in any agreement which requires defense and/or indemnification, for death or bodily injury to persons, where there is negligence or fault (strict liability) on the part of the indemnitee, or an agent or employee of the indemnitee, or an independent contractor who is directly responsible to the indemnitee.
B. Any provision contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an independent contractor who is directly responsible to the indemnitee.
C. The term "agreement," as it pertains to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, as used in this Section, means any agreement or understanding, written or oral, concerning any operations related to the exploration, development, production, or transportation of oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, including but not limited to drilling, deepening, reworking, repairing, improving, testing, treating, perforating, acidizing, logging, conditioning, altering, plugging, or otherwise rendering services in or in connection with any well drilled for the purpose of producing or excavating, constructing, improving, or otherwise rendering services in connection with any mine shaft, drift, or other structure intended for use in the exploration for or production of any mineral, or an agreement to perform any portion of any such work or services or any act collateral thereto, including the furnishing or rental of equipment, incidental transportation, and *982 other goods and services furnished in connection with any such service or operation.
* * *
G. Any provision in any agreement arising out of the operations, services, or activities listed in Subsection C of this Section of the Louisiana Revised Statutes of 1950 which requires waivers of subrogation, additional named insured endorsements, or any other form of insurance protection which would frustrate or circumvent the prohibitions of this Section, shall be null and void and of no force and effect.

* * *
I. This Act shall apply to certain provisions contained in, collateral to or affecting agreements in connection with the activities listed in Subsection C which are designed to provide indemnity to the indemnitee for all work performed between the indemnitor and the indemnitee in the future. This specifically includes what is commonly referred to in the oil industry as master or general service agreements or blanket contracts in whatever form and by whatever name. The provisions of this Act shall not apply to a contract providing indemnity to the indemnitee when such contract was executed before the effective date of this Act and which contract governs a specific terminable performance of a specific job or activity listed in Subsection C.
La. R.S. 9:2780(A), (B), (C), (G) and (I) (emphasis added). The plain and clear import of these statutory provisions, particularly those portions which we have emphasized, is that a party which is solely or even concurrently negligent or at fault (strictly liable) as to a death or bodily injury may not enforce a contractual provision calling for it to be made on additional assured on the other party's insurance policy (or receive the benefit of such additional assured status) and may not enforce a contractual provision for a waiver of subrogation (or receive the benefit of a waiver of subrogation in the other party's insurance policy). See Livings v. Service Truck Lines of Texas, Inc., 467 So.2d 595, 599 (La.App. 3rd Cir.1985); Babineaux v. McBroom Rig Building Service, Inc., 806 F.2d 1282, 1284 (5th Cir.1987), on rehearing, 811 F.2d 852, supplemental opinion, 817 F.2d 1126 (5th Cir.1987); Davis v. Mobil Oil Exploration and Producing Southeast, Inc., 864 F.2d 1171, 1176 (5th Cir.1989). See also Murray v. Trunkline Gas Co., 544 So.2d 28, 32 (La.App. 4th Cir.1989); Hodgen v. Forest Oil Corp., 87 F.3d 1512, 1529 (5th Cir.1996), certification denied, 96-1832 (La.10/25/96), 681 So.2d 354, supplemental opinion, 115 F.3d 358, 359 (5th Cir.1997); Marcel v. Placid Oil Co., 11 F.3d 563, 568-70 (5th Cir.1994); Patterson v. Conoco, Inc., 670 F.Supp. 182, 184 (W.D.La.1987). Compare Fontenot v. Chevron U.S.A., Inc., 95-1425 (La.7/2/96), 676 So.2d 557.[1]
Thus, the insurance provision of the MSC in the present case is voided if, but only if, D & C (or its employees) was solely or concurrently negligent or at fault (strict liability) with respect to the injury to Mr. Ridings. Fontenot v. Chevron U.S.A., Inc., 95-1425 (La.7/2/96), 676 So.2d 557, 563 and n. 7; Meloy v. Conoco, 504 So.2d 833, 838 (La. 1987). The issue of sole or concurrent negligence or fault (strict liability) of D & C or its employees has not yet been decided. Thus, there necessarily remains a genuine issue of material fact as to the enforceability of the insurance provision of the MSC and, consequently, summary judgment cannot be granted based upon that insurance provision. La. Code Civ. Proc. art. 966. See generally, e.g., Motton v. Lockheed Martin Corp., 97-0204 (La.App. 4th Cir.12/1/97), 703 So.2d 202, 204-206 (discussing summary judgment in light of recent amendments to Article 966). This genuine issue of material fact, whether or not D & C (or its employees) was solely or *983 concurrently negligent or at fault (strict liability), must be decided upon remand by trial or even, perhaps, upon a further motion for summary judgment.[2]
D & C's sole argument that the LOAIA does not apply to the insurance provision at issue is based upon the assertion that its MSC with AOD does not "pertain to a well" so as to be within the scope of the statute. It is correct that one of the conditions for the application of the LOAIA to a contract containing an indemnity provision is that the contract must pertain to a well. La. R.S. 9:2780(B). See Roberts v. Energy Development Corp., 104 F.3d 782, 784-85 (5th Cir. 1997); Lloyds of London v. Transcontinental Gas Pipe Line Corp., 38 F.3d 193, 196 (5th Cir.1994); Johnson v. Amoco Production Co., 5 F.3d 949, 953-54 (5th Cir.1993); Broussard v. Conoco, Inc., 959 F.2d 42, 44 (5th Cir.1992). It is undisputed that the work that AOD did for Murphy Oil Company, and the work that D & C did for Murphy Oil Company, pertained to Murphy Oil Company wells. But, the MSC at issue in this case does not specify the work for Murphy Oil Company or any particular work, but, instead, makes provisions that will be applicable to any work that is done later by AOD for D & C "under work orders, oral or written, given on or after the date hereof." This is typical of master service contracts in the oil and gas industry:
As is customary in the industry "master service contracts" do not provide for any specific work or services to be performed, but refer in general terms to the need by one party for labor, services or materials, and the desire on the part of the other to furnish same. Specific services are later called for under the master service agreement by work orders, purchase orders or simply invoices.
Livings v. Service Truck Lines of Texas, Inc., 467 So.2d 595, 600 (La.App. 3rd Cir. 1985).
The fact that an indemnification provision or an additional assured or waiver of subrogation provision appears only in a master service contract which does not provide for any particular work does not insulate that provision from the LOAIA. The statute specifically states that it applies to master service contracts. La. R.S. 9:2780(I). Moreover, many of the decisions applying the statute do so in the context of indemnity and/or insurance provisions which appear only in a master service contract. See, e.g., Hodgen v. Forest Oil Corp., 87 F.3d 1512, 1528 (5th Cir.1996) ("[T]he relevant contract is any master agreement as modified by the specific work order in effect at the particular time and by the practice of the parties to the contract."), certification denied, 96-1832 (La.10/25/96), 681 So.2d 354, supplemental opinion, 115 F.3d 358 (5th Cir.1997); Babineaux v. McBroom Rig Building Service, Inc., 806 F.2d 1282, 1284 (5th Cir.1987), on rehearing, 811 F.2d 852, supplemental opinion, 817 F.2d 1126.
A somewhat unusual aspect of the facts in the present case is that there was never any work order between AOD and D & C for the particular work during which occurred the accident at issue in this case. Instead, AOD and D & C each contracted directly and separately with Murphy Oil Company. Thus, the MSC as a whole is not applicable in the present case. However, the MSC provides at its Paragraph (1)(B) that: "With respect to any work performed by [AOD], pursuant to contracts or work orders with parties other than [D & C], on any drilling barge, vessel, platform, installation or other property of any kind, which is owned or occupied by [D & C] ... or where [D & C] is working for the account of others, Paragraphs *984 (8), (9), (10) and (11) of this Contract [including the insurance and indemnity provisions] shall be applicable as between [AOD] and [D & C] with respect to the work so performed." Thus, even though AOD and D & C each contracted directly with Murphy Oil Company for the work involved in the present case, and did not enter into a work order directly with one another for that particular work, the insurance and indemnity provisions of the MSC are applicable (unless voided by the LOAIA).
The crux of D & C's argument that the MSC does not pertain to a well, despite the fact that the work involved in the present case pertained to Murphy Oil Company's wells, is that the MSC does not provide for any particular work and D & C had no work order with AOD linking the MSC to the work for Murphy Oil Company. We are not persuaded. Because the above-quoted Paragraph (1)(B) of the MSC made the MSC's insurance and indemnity provisions applicable to the two parties' work for Murphy Oil Company, and because that work pertained to wells, the insurance and indemnity provisions of the MSC (the very provisions relevant to the LOAIA) necessarily pertain to wells. D & C cannot apply the insurance and indemnity provisions to the work which pertained to wells while, at the same time, denying that those provisions pertain to a well.
Lastly, D & C complains that AOD has asserted its own cross-claim for contractual indemnity under the MSC against D & C at the same time that it raises the LOAIA against D & C's claim under the insurance provisions of the MSC. D & C ignores the point that the LOAIA voids insurance and indemnity provisions only when they call for insurance or indemnification of parties who were solely or concurrently negligent or at fault (strict liability). If, on remand, the trial court finds that D & C was not negligent or at fault (strictly liable), then the insurance provision will not be voided and will prime the indemnity provisions. If the trial court finds that D & C was negligent or at fault (strictly liable), then the insurance provision will be voided. If the trial court finds that AOD was negligent or at fault (strictly liable), then the indemnity provision in favor of AOD will be voided. If the trial court finds that AOD was not negligent or at fault (strictly liable), then the indemnity provision in favor of AOD will not be voided (but will be primed by the insurance provision if the trial court finds D & C not negligent or at fault (strictly liable)). If the trial court finds that both AOD and D & C were negligent or at fault (strictly liable), then both the insurance provision and the indemnity provision in favor of AOD will be voided.
For the foregoing reasons, the judgment of the trial court is reversed and this case is remanded for further proceedings.
REVERSED AND REMANDED.

ON REHEARING
In its Petition for Rehearing, D & C renews its argument that the LOAIA does not apply in this case. Specifically, D & C argues that the MSC is not "an agreement pertaining to a well," within the meaning of the LOAIA, because the MSC is a contract for the provision of the services of a vessel (access to the ERIC DANOS, use of its equipment, etc.) by D & C to AOD and that a contract for the services of a vessel necessarily is not an "agreement pertaining to a well." We disagree with D & C's argument for several reasons.
There is no reason that a contract for vessel services cannot, depending upon the circumstances, be an "agreement pertaining to a well" within the meaning of the LOAIA. The LOAIA provision defining "`agreement' as it pertains to a well" is very expansive and includes "furnishing ... incidental transportation," La. R.S. 9:2780(c), which could be by use of vessels. "The language of the [LOAIA] ... gives it the broadest possible meaning and does not draw distinctions based on ... the type of contract involved." Hodgen v. Forest Oil Corp., 115 F.3d 358, 360 (5th Cir.1997). Of course, it usually may be the case that a contract for vessel services will be found to be a maritime contract with the result that it is governed by federal law to the exclusion of Louisiana law including the LOAIA. See generally, e.g., Howell v. American Casualty Co., 96-0694 (La.3/19/97), 691 So.2d 715, 732-34, writ denied, 97-1329, 97-1379, 97-1426 (La.9/5/97), 700 So.2d 512, 515, 518. But, as we held on *985 original hearing, the MSC is governed by Louisiana law, rather than federal law, due to the MSC's Louisiana choice-of-law clause.[1]
The insurance and indemnity provisions of the MSC are subject to the LOAIA if for no other reason than that they "affect" "an agreement pertaining to a well." AOD's contract with Murphy Oil Company certainly "pertained to a well" because, pursuant to that contract, AOD provided services for Murphy Oil Company's wells. Because AOD's work for Murphy Oil Company involved a vessel, AOD was subject to the MSC's insurance and indemnity provisions while performing that work and, thus, AOD's contract with Murphy Oil Company was "affected" by the insurance and indemnity provisions of the MSC. The LOAIA is applicable to "[a]ny provision ... affecting an agreement pertaining to a well," La. R.S. 2780(B), and so the LOAIA applies to the MSC's insurance and indemnity provisions.
Further, and as we discussed to some extent in our opinion on original hearing, when the MSC is read in the factual context of the present case, it "pertains to a well" because its insurance and indemnity provisions are applied to well-related work. AOD did work on Murphy Oil Company's wells, AOD used D & C's vessel for that work, and, as a result of those circumstances, the MSC's insurance and indemnity provisions became applicable. We do not believe that the MSC should be divorced from the AOD work which caused the MSC's insurance and indemnity provisions to be applicable and so, because that AOD work was well-related, the MSC "pertains to a well" with respect to that AOD work.
Accordingly, Danos & Curole's Petition For Rehearing is denied.
REHEARING DENIED.
PLOTKIN, J., dissents and would grant rehearing with reasons.
PLOTKIN, J., dissenting and would grant rehearing with reasons:
I would grant rehearing in this case solely to modify our holding and to order the trial court to determine if the Master Service Contract pertains to a well.
The majority correctly notes that Louisiana courts have liberally interpreted the meaning of "pertains to a well." This has resulted in the expansive application of the LOIA to many different contracts. Regardless, in Transcontinental Gas Pipe Line Corp. v. Transportation Insurance Co., 953 F.2d 985, 994-95 (5th Cir.1992), the court enunciated an extensive test to determine if a particular contract pertains to a well. It is as follows:
(1) whether the structures or facilities to which the contract applies or with which it is associated, e.g., production platforms, pipelines, junction platforms, etc., are part of an infield gas gathering system;
(2) what is the geographic location of the facility or system relative to the well or wells;
(3) whether the structure in question is a pipeline or is closely involved with a pipeline;
(4) if so, whether that line picks up gas from a single well or a single production platform or instead carries commingled gas originating from different wells or production facilities;
(5) whether the pipeline is a main transmission or trunk line;
(6) what is the location of the facility or structure relative to compressors, regulating stations, processing facilities or the like;

*986 (7) what is the purpose or function of the facility or structure in question;
(8) what if any facilities or processes intervene between the wellhead and the structure or facility in question, e.g., "heater treaters," compressor facilities, separators, gauging installations, treatment plants, etc;
(9) who owns and operates the facility or structure in question, and who owns and operates the well or wells that produce the gas in question;
(10) any number of other details affecting the function and geographic nexus between "a well" and the structure or facility that is the object of the agreement under scrutiny.
In Livings v. Service Truck Lines of Texas, Inc., 467 So.2d 595 (La.App. 3 Cir.1985), the court interpreted the test enunciated above broadly when determining if the contract in question fell within the reach of the LOIA. It determined that "the services [do not have to] be rendered at the site of or in connection with the drilling or operation of a specific well to fall within the provisions of La.R.S. 9:2780." Id. At 599. As long as the services of one of the parties are related to the exploration, development, production, or transportation of oil, gas or water.
In Fuselier v. Amoco Production Co., 546 So.2d 306 (La.App. 3 Cir.1989), another master service agreement was analyzed. In that case, pursuant to the agreement, Meier Contractors was to provide various services in conjunction with Amoco's production facility in Pine Prairie, La. Mr. Fuselier was sent to the Amoco plant by Meier to perform grass cutting operations. While doing his job, Mr. Fuselier severed a pipe, causing an explosion, resulting in severe burns to his person. The court found that "Fuselier's bush-hogging activities constitute general upkeep of the grounds of the production facility which is a necessary part of production." Id. At 307. The court also explained the focus of the LOIA:
The focus of the Anti-Indemnity Act is on the contractual relationship between the oil company/producer and the contractor. The Act does not differentiate between the types of services that are provided by a contractor, as long as the contract itself relates to the exploration, development, production or transportation of oil, gas, or water.
Id.
In Copous v. ODECO Oil & Gas Co., 835 F.2d 115 (5th Cir.1988), the court again liberally construed the reach of the LOIA. That case also involved a master service contract. The victim was injured when he fell from a ladder while fixing tiles on the ceiling in the living quarters on a platform. The court stated:
The summary judgment evidence reveals that ODECO's platform is designed and operated as a manned platform. For personnel to serve aboard the platform, living quarters are necessary. Because the living quarters were essential to operation of the manned platform, we agree with the district court that a contract to renovate those living quarters is "related" to the production of oil and gas and within the scope of the OIA;
Id. at 117.
It is apparent that courts have applied the LOIA generously to several types of contracts. However, in this particular case, the record is inadequate to make such a determination. The only "evidence" of the nature of the master service agreement is the self-serving statement by AOD that the contract does indeed pertain to a well. However, a facial reading of the master service agreement reveals a contract for vessel services with no mention of any services pertaining to a well. As noted, the trial court never reached the issue of whether or not the master service contract pertained to a well. I believe it would be imprudent to decide this issue at the appellate level and would remand to the trial court to conduct necessary proceedings to make such a determination.
NOTES
[1] Louisiana Law, including the LOAIA, rather than federal maritime law, applies to the MSC in the present case because the MSC contains a Louisiana choice-of-law clause. Stoot v. Fluor Drilling Services, Inc., 851 F.2d 1514 (5th Cir. 1988); Angelina Casualty Co. v. Exxon Corp. U.S.A., Inc., 701 F.Supp. 556, 559 and n. 15 (E.D.La.1988). See Rodrigue v. Legros, 563 So.2d 248, 251 (La.1990) (maritime law, rather than LOAIA, governed indemnity provisions of maritime contract "absent a valid choice of law clause").
[2] Tanksley v. Gulf Oil Corp., 848 F.2d 515 (5th Cir.1988) held that, when the indemnitee has settled with the original plaintiff, there is no determination of negligence or fault (strict liability) of the indemnitee, and so the indemnity agreement cannot be enforced. We respectfully disagree. Whether the indemnitee was negligent or at fault (strict liability) in causing injury to the original plaintiff can be determined at trial between the indemnitee and the indemnitor even after the indemnitee has settled with the original plaintiff. Tanksley's position on this point appears to have been questioned in dicta in Fontenot v. Chevron U.S.A., Inc., 95-1425 (La.7/2/96), 676 So.2d 557, 563 n. 7, and apparently was rejected in the analogous situation of the indemnitee having a statutory immunity in Phillips Petroleum Corp. v. Liberty Services, Inc., 95-124 (La.App. 3rd Cir.1995), 657 So.2d 405, 409.
[1] None of the cases cited by D & C supports its proposition that a contract for vessel services necessarily is not "an agreement pertaining to a well" subject to the LOAIA. In Fontenot v. Chevron U.S.A., Inc., 95-1425 (La.7/2/96), 676 So.2d 557, the Court held that a waiver of subrogation by Aetna in a workers' compensation insurance policy was not voided by the LOAIA. In Johnson v. Amoco Production Co., 5 F.3d 949 (5th Cir. 1993), the Court held that an indemnity provision in a contract to rebuild a gas compression station in Arkansas was not voided by the LOAIA. In Campbell v. Sonat Offshore Drilling, 979 F.2d 1115 (5th Cir.1992), the Court found that the contract involved was a maritime contract governed by federal maritime law rather than by Louisiana law (including the LOAIA) adopted as surrogate federal law by the Outer Continental Shelf Lands Act, 43 U.S.C. § 1333.