| TIMOTHY LADNER AND LORAINE LADNER | * | NO. 2024-C-0543 |
| | * | |
| VERSUS | * | COURT OF APPEAL |
| | * | |
| OCHSNER BAPTIST MEDICAL CENTER, L.L.C. AND ABC INSURANCE COMPANY | * | FOURTH CIRCUIT |
| | | STATE OF LOUISIANA |
| | * * * * * * * | |

| CONSOLIDATED WITH: | CONSOLIDATED WITH: |
| | |
| TIMOTHY LADNER AND LORAINE LADNER | NO. 2024-C-0545 |
| | |
| VERSUS | |
| | |
| OCHSNER BAPTIST MEDICAL CENTER, L.L.C. AND ABC INSURANCE COMPANY | |

APPLICATION FOR WRITS DIRECTED TO
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2019-02673, DIVISION "L"
Honorable Kern A. Reese, Judge
* * * * * *
**Judge Dale N. Atkins**
* * * * * *
(Court composed of Judge Roland L. Belsome, Judge Rosemary Ledet, Judge Dale N. Atkins)


**BELSOME, J., DISSENTS IN PART AND CONCURS IN PART WITH REASONS.**


Sidney W. Degan, III
Travis L. Bourgeois
Candace C. Chauvin
DEGAN, BLANCHARD & NASH
400 Poydras Street, Suite 2600
New Orleans, Louisiana 70130

Mandy A. Simon
DEGAN, BLANCHARD & NASH
600 Jefferson Street, Suite 800
Lafayette, Louisiana 70501

COUNSEL FOR RELATOR, The Gray Insurance Company

Jason R. Kenney
Michael W. Maldonado
STAINES, EPPLING & KENNEY
3500 N. Causeway Boulevard, Suite 820
Metairie, Louisiana 70002


COUNSEL FOR RELATOR, Carriere-Stumm, LLC


Joseph J. Lowenthal Jr.
Madeleine Fischer
JONES WALKER LLP
201 St. Charles Avenue, Suite 5100
New Orleans, LA 70170-5100


COUNSEL FOR RESPONDENT, Ochsner Baptist Medical Center, LLC, and Ochsner Clinic Foundation


**WRIT GRANTED; JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; REMANDED**
**DECEMBER 10, 2024**

*DNA*

*DLD*

*RML*

*SCJ*

These consolidated writ applications relate to a personal injury lawsuit filed by Timothy Ladner ("Mr. Ladner") and Loraine Ladner ("Mrs. Ladner"). Relators are The Gray Insurance Company ("Gray") and Carriere-Stumm, LLC ("Carriere-Stumm"); and Respondents are Ochsner Baptist Medical Center, LLC ("Ochsner Baptist"), and Ochsner Clinic Foundation ("OCF") (sometimes collectively referred to as "Ochsner"). Gray and Carriere-Stumm both seek review of the trial court's August 16, 2024, judgment, which denied their respective Motions for Summary Judgment regarding the applicability of the Louisiana (Construction) Anti-Indemnity Act ("LCAIA"), La. R.S. 9:2780.1. The trial court also granted a Motion for Partial Summary Judgment filed by OCF regarding defense and indemnity, as well as its bad faith claim against Gray. For the following reasons, we grant the consolidated writ applications; reverse the trial court's grant of OCF's Motion for Partial Summary Judgment; affirm the trial court's denial of Gray's and Carriere-Stumm's Motions for Summary Judgment; and remand this matter for further proceedings.

1

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

*Petitions for Damages*

On March 12, 2019, Mr. and Mrs. Ladner (collectively "Plaintiffs") filed a Petition for Damages ("Petition") in Civil District Court for the Parish of Orleans with Ochsner Baptist listed as a defendant as "the owner, operator and custodian" of Ochsner Baptist Medical Center in New Orleans. In their Petition, Plaintiffs alleged that on April 2, 2018, Mr. Ladner was an employee of Carriere-Stumm and was working at Ochsner Baptist Medical Center. Plaintiffs explained that Mr. Ladner arrived at the hospital's premises at approximately 6:00 a.m. in search of the service elevator, whereupon he "walk[ed] through the poorly lit basement" and found elevator doors that were "apparently open (or no doors were attached)." Thereafter, according to Plaintiffs, Mr. Ladner walked into the service elevator, but "[u]nbeknowst to [him] the elevator was not at the basement level," and, "as a result[, he] fell to the bottom of the elevator shaft and was severely injured." Plaintiffs averred in their Petition that the accident and Mr. Ladner's injuries were solely, directly, and proximately caused by Ochsner Baptist's negligence and fault.

Then, on December 8, 2022, Plaintiffs filed a First Amended Petition for Damages and added OCF as a defendant. Plaintiffs alleged that during the relevant time period OCF "was the Office/Member" of Ochsner Baptist and had "entered into [a] construction contract with [Carriere-Stumm] to conduct repairs to the roofs at Ochsner Baptist." They further asserted that "[a]t all relevant times, Mr. Ladner was working for [Carriere-Stumm] on the construction project" at the hospital.

Subsequently, Plaintiffs filed a Second Amended Petition for Damages and added Gray as a defendant. Plaintiffs contended that Gray provided Carriere-Stumm with a liability insurance policy, in which OCF was "an additional insured

2

in compliance with the contractual provisions in the construction contract between [OCF] and Carriere-Stumm." Further, Plaintiffs alleged that the Gray policy "contained a policy endorsement adding as additional insured any 'person, form or organization' --- 'when required by written contract.'" To this end, Plaintiffs further alleged that the roofing contract between Carriere-Stumm and OCF required OCF to be named as an additional insured. Plaintiffs argued, therefore, that Gray "had an insurance liability policy insuring [OCF] for incidents of the type and nature complained of in [their] lawsuit."

### *Ochsner Baptist's Third Party Demand*

In July 2021, Ochsner Baptist filed a Third-Party Demand, naming Carriere-Stumm as a defendant. In its Third-Party Demand, Ochsner Baptist denied all liability for Mr. Ladner's accident but also alleged that the roofing contract between Ochsner Baptist and Carriere-Stumm obligated Carriere-Stumm to indemnify Ochsner Baptist and hold it harmless. In particular, Ochsner Baptist alleged that the "Indemnification and Insurance" provision of the roofing contract:

> obligate[d] [Carriere-Stumm] to the fullest extent permitted by law to indemnify and hold harmless Ochsner . . . from and against claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from performance of the Work provided that such claim, damage, loss or expense is attributable to bodily injury, . . . but only to the extent caused by the negligent acts or omissions of the contractor, . . . anyone directly or indirectly employed by them . . . regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder.

(Alteration in original). Additionally, Ochsner Baptist contended in its Third-Party Demand that the roofing contract required Carriere-Stumm to maintain insurance, specifically "commercial general liability coverage including contractual liability and bodily injury damage of $1 million for each occurrence," with Ochsner

required "to be named as an additional insured including a waiver of subrogation in its favor." Further, Ochsner Baptist alleged that Carriere-Stumm was obligated "to provide excess insurance coverage to the commercial general liability policy of $5 million naming Ochsner as an additional insured and including a waiver of subrogation in it is [sic] favor."

### OCF's Cross-Claims against Gray

Also in July 2021, OCF filed a cross-claim against Gray, wherein OCF contended that, among other requirements, the roofing contract required Carriere-Stumm "to maintain commercial general liability insurance and excess insurance coverage under which OCF would be named as an additional insured." OCF further contended that Carriere-Stumm procured the policies from Gray, "each of which provided coverage as additional insureds to entities as required by written contract of Carriere-Stumm." OCF also asserted that at the time Ochsner Baptist and Carrierre-Stumm entered into the roofing contract and at the time of Mr. Ladner's alleged accident, the Gray insurance policies were in effect. OCF alleged that by virtue of the policies' terms, it "automatically became an additional insured under the Gray policies for Mr. Ladner's accident, and Carriere-Stumm was charged no additional premium therefore by Gray." OCF asserted that as an additional insured, it "ha[d] made amicable demand on Gray to assume its defense and to pay any judgment or settlement that might result against OCF in the instant case" but that "Gray ha[d] not responded."

Subsequently, OCF filed a first amended cross-claim against Gray, therein alleging that "[f]or a number of years" prior to Mr. Ladner's alleged accident, "Carriere-Stumm had maintained its commercial general liability insurance with Gray." OCF alleged that in April 2016, Gray submitted an insurance proposal to

4

Carriere-Stumm, which included an indication "that the commercial liability primary coverage would include a provision for 'Blanket Additional Insureds where required by contract.'" However, OCF asserted that "Gray did not inform Carriere-Stumm that it would deny coverage to any owner or principal who would qualify as an additional insured under the additional insured provisions of the policies it proposed to issue" and that "Carriere-Stumm accepted Gray's entire proposal." OCF stated that Gray issued to Carriere-Stumm, as a primary policy, "a commercial general liability policy with an occurrence limit of $1,000,000 (excess of $25,000 self-insured retention) with policy number XSGL-074226 and a policy period of May 1, 2016 to May 1, 2019." Additionally, OCF averred that an excess policy was also issued by Gray to Carriere-Stumm "for $4,000,000 excess of underlying insurance, with policy number XSGL-074226 and a policy period of May 1, 2016 to May 1, 2019."

OCF alleged that both policies issued by Gray to Carriere-Stumm "provided coverage as additional insureds to entities as required by written contract of Carriere-Stumm." According to OCF, the primary policy "stated that any person or organization would be an additional insured with respect to liability arising out of Carriere-Stumm's operations, 'when required by written contract'" and also included a second endorsement, stating "that any person or organization would be an additional insured 'with respect to liability arising out of 'your work' for that insured by or for you.'" Further, the primary policy, per OCF, "stated that its insurance would be primary to and would not seek contribution from any other insurance available to an additional insured provided that 1) the additional insured was a Named Insured under such other insurance and 2) Carriere-Stumm had agreed in a contract that Gray's insurance would be primary and would not seek

5

contribution from any other insurance available to the additional insured."

Furthermore, OCF alleged that the excess policy "stated that the unqualified word 'insured' wherever used in the Policy included 'any person, organization, trustee or estate to whom the Named Insured is obligated by virtue of a written contract or agreement to provide insurance such as is afforded by this policy, but only to the extent of such obligation and in respect of operations by or on behalf of the Named Insured.'" Also, OCF averred that prior to the roofing contract at issue in this matter being executed that it "was given a Certificate of Liability Insurance that showed that Gray maintained the above Primary Policy and Excess Policy," which "stated that the Certificate Holder was Ochsner Clinic Foundation." OCF alleged that the certificate "stated that, '[t]he certificate holder is an additional insured on all policies except Workers' Compensation and is provided a Waiver of Subrogation, all if required by written contract. The above insurance policies shall be primary and noncontributory to other insurance policies maintained by the certificate holder, if required by written contract. Project: Ochsner Baptist Medical Center.'"

OCF alleged that both policies, the primary policy and the excess policy, were in effect at the time the roofing contract was executed and carried out, as well as when Mr. Ladner's alleged injury occurred on April 2, 2018. OCF reiterated its argument that under the terms of the policies, "OCF automatically became an additional insured under the Gray policies for [Mr.] Ladner's accident, and Carriere-Stumm was charged no additional premium therefore by Gray." OCF again explained that "[a]s an additional insured, [it] ha[d] made amicable demand on Gray to assume its defense and to pay any judgment or settlement that might

6

result against OCF in the instant case" but that Gray had "not agreed to assume its obligations to OCF as an additional insured under its policies."

Further, OCF alleged that regardless of the assertions made in Gray's answer to its original cross-claim, "Gray ha[d] admitted in its corporate deposition that its denial of coverage [was] not based [o]n any language in the policy, and that if the policy were considered alone without reference to the [LCAIA], there would be no issues with coverage." Therefore, OCF asserted that Gray's statements in its pleadings that its position as to its coverage was "in any way based on policy terms, provisions, conditions, exclusions, limitation, and endorsements [was] a knowing misrepresentation of coverage and constitutes bad faith." OCF asserted that despite Gray's "many professions of additional insured coverage, all of which applied to OCF, Gray never had any intention of providing additional insured coverage to OCF" and that Gray sold Carriere-Stumm the primary and excess policies, including the additional insured coverage, as a standard package, with "[t]he additional insured coverage [being] illusory because Gray never intended to honor it." OCF contended that it had "contributed to the costs of Carriere-Stumm's insurance as a whole (including additional insured provisions), because Ochsner paid a percentage of the cost of the Construction Contract to cover Carriere-Stumm's overhead and profit," with the overhead costs including insurance costs. OCF averred that "Gray has asserted that its only reason for denying coverage to OCF was its interpretation of the [LCAIA], not any language in its policy" but that OCF as an additional insured under the policies, stands in the shoes of the Named Insured, Carriere-Stumm, having standing to bring a claim for defense, coverage and bad faith against Gray. OCF averred that Gray violated the duty of good faith it owed to both Carriere-Stumm, its named insured, and to OCF, its additional

7

insured. As such, OCF urged that "Gray should be required to retroactively reimburse OCF for all fees and costs incurred in the defense of OCF thus far and to contemporaneously reimburse OCF for such fees and costs when incurred in the future going forward until the final termination of this litigation."

### Gray's Motion for Summary Judgment and OCF's Opposition Thereto

On March 23, 2023, Gray filed its Motion for Summary Judgment, seeking dismissal of OCF's and Plaintiffs' claims. Gray argued that OCF did not have a valid cause of action against it for additional insured coverage as to the claims asserted by Plaintiffs, nor as to bad faith. Also, Gray contended that Plaintiffs' claims should be dismissed because the LCAIA voids any insurance obligation in favor of OCF. In its memorandum in support of summary judgment, Gray contended that this case is the epitome of why the legislature enacted La. R.S. 9:2780.1 and 9:2780, "to avoid adhesionary contracts in which, due to unequal bargaining power, a contactor would have no choice but to agree to defend, indemnify and purchase liability insurance for a larger company, such as an oil company, general construction company, or in this case" OCF. Gray stated that the LCAIA "was enacted to make such adhesionary contracts null and void as against the public policy of the State and to protect small companies such as Carriere-Stumm from having to shoulder the costs of the negligence of companies like OCF or risk losing business." Further, Gray urged that under the LCAIA, the contractual provisions in this case are null and void, "such that Carriere-Stumm does not have an obligation to defend and indemnify OCF and OCF is not entitled to additional insured coverage, as such is against the public policy of the State." According to Gray the roofing contract between OCF and Carriere-Stumm contained "no provisions . . . that [state that] the premium for any additional

8

insured coverage was included in the price of the contract or in any way paid for by OCF." Gray asserted that summary judgment was warranted because OCF did not have a valid claim for additional insured coverage because the roofing contract between OCF and Carriere-Stumm was in violation of both the LCAIA and this state's public policy.

Gray contended that because Schedule 2 of the roofing contract "indicate[d] that Carriere-Stumm was to name OCF as an additional insured on several types of coverage" but with "no language limiting that additional insured status to only the actions of Carriere-Stumm," the contract provision on its face violated the LCAIA. Further, Gray argued that OCF could not satisfy the exceptions to the LCAIA in order for there to be a valid additional insured obligation in the roofing contract because OCF could not establish all of the required elements under La. R.S. 9:2780.1(I)(2).[1] Gray asserted that OCF could not establish that the additional insurance coverage provided liability coverage due to an obligation to indemnify, defend, or hold harmless; that there was no evidence that Carriere-Stumm

---

[1] Louisiana Revised Statutes 9:2780.1(I) provides:

Nothing in this Section shall invalidate or prohibit the enforcement of the following:

(1) Any clause in a construction contract containing the indemnitor's promise to indemnify, defend, or hold harmless the indemnitee or an agent or employee of the indemnitee if the contract also requires the indemnitor to obtain insurance to insure the obligation to indemnify, defend, or hold harmless and there is evidence that the indemnitor recovered the cost of the required insurance in the contract price. However, the indemnitor's liability under such clause shall be limited to the amount of the proceeds that were payable under the insurance policy or policies that the indemnitor was required to obtain.

(2) Any clause in a construction contract that requires the indemnitor to procure insurance or name the indemnitee as an additional insured on the indemnitor's policy of insurance, but only to the extent that such additional insurance coverage provides coverage for liability due to an obligation to indemnify, defend, or hold harmless authorized pursuant to Paragraph (1) of this Subsection, provided that such insurance coverage is provided only when the indemnitor is at least partially at fault or otherwise liable for damages ex delicto or quasi ex delicto.

9

recovered the costs of the insurance in the roofing contract; and that OCF could not establish that Carriere-Stumm was at least partially at fault. Further, Gray argued that despite OCF's allegation in its cross-claim that Gray has a duty to defend OCF as an additional insured on its policies, the "additional insured provision is null and void pursuant to [the] L[C]AIA."

Additionally, Gray contended that OCF cannot establish its claim for misrepresentation because Gray's "catchall affirmative defenses in its answer to OCF's cross-claims does not constitute the type of conduct contemplated as bad faith" provided that "OCF cannot establish how the affirmative defenses constitute a misrepresentation as to pertinent facts or insurance policy provisions relating to any coverages at issue." Additionally, Gray averred that its deposition establishes that there is a current dispute regarding the LCAIA and that none of its at-issue affirmative defenses "are contrary to that position or are factual statements as contemplated by the statute." Furthermore, Gray argued that OCF cannot establish that its inclusion of affirmative defenses in its answer constitutes arbitrary and capricious conduct so as to constitute vexatious conduct as defined by Louisiana courts. Also, Gray argued that it did not make any misrepresentations to OCF in issuing the Certificate of Liability Insurance because that certificate "does not override the public policy of the State of Louisiana that holds that insurance provisions, such as the one at issue in this case, are null and void." Gray also stated that before issuing that certificate, it had not been provided with any contract nor did it "determine what type of coverage either OCF or Carriere-Stumm required" but maintained that OCF "as a sophisticated company with its own legal department" could have ensured that its contract, including the provisions therein, were in compliance with Louisiana law.

10

OCF opposed Gray's Motion for Summary Judgment. In its opposition, OCF adopted in full its own pending Motion for Partial Summary Judgment and supporting exhibits, which motion was set for hearing on the same date as Gray's Motion for Summary Judgment. OCF argued that the reasons that Gray's Motion for Summary Judgment should be denied were similar to the reasons OCF's own Motion for Partial Summary Judgment against Gray should be granted.

OCF contended that the LCAIA does not contain a blanket prohibition against indemnity agreements or insurance coverage for OCF in this situation but instead provides multiple ways in which OCF can obtain indemnity from Carriere-Stumm or insurance coverage from Gray. First, OCF asserted that indemnity by Carriere-Stumm is allowed if there is no insurance to indemnify OCF for the negligent acts of Carriere-Stumm under La. 9:2780.1(B). According to OCF, the only type of indemnity in the construction contract that Carriere-Stumm had to provide under paragraph 5 was "for any liability that might be visited on OCF as a result of negligent acts or omissions of Carriere-Stumm (the indemnitor)" and was only applicable if there was no insurance coverage. Second, OCF argued that under the LCAIA, specifically La. R.S. 9:2780.1(I)(1), Carriere-Stumm was specifically permitted to promise complete indemnity when insurance for contractual indemnity was provided if that cost was reimbursed by OCF. OCF asserted that both requirements of the statute were met because (1) the roofing contract required Carriere-Stumm to obtain certain insurance; and (2) the cost of the insurance was met, because "according to Carriere-Stumm, there was no additional charge by Gray for including coverage for OCF," and "[e]ven were this not sufficient, there is evidence that Carriere-Stumm charged a 10% add-on for

11

overhead and profit" with overhead being inclusive of insurance premiums, per Robert Stumm of Carriere-Stumm.

OCF also argued that its status as an additional insured under Gray's policy was permitted if Carriere-Stumm is also found to be at fault for Mr. Ladner's alleged accident. To this end, OCF averred that the additional insured provision in the LCAIA is a separate exception from Paragraph (I)(1) of La. R.S. 9:2780.1. Further, and notwithstanding its previous arguments, OCF contended that pursuant to Paragraph (I)(2) of La. R.S. 9:2780.1, a contractor can name an owner as an additional insured to its policy and that provision "on its face does not require that OCF reimburse Carriere-Stumm for the cost of coverage." OCF stated that "[u]nder the allowable additional insured coverage, it is clear that coverage attaches even if OCF is ultimately found to be partially at fault" for Mr. Ladner's alleged accident.

Further, OCF asserted that Gray was obligated to provide it with coverage as an additional insured under Carriere-Stumm's policies and that Gray should undertake OCF's defense retroactive to the first demand. OCF contended that this obligation was based on the allegations contained in the pleadings, along with the insurance provisions, which evidenced the potential for coverage. That is, OCF argued that as long as a possibility for coverage existed, Gray had a duty to defend it. Lastly, OCF contended that Gray's conduct in denying OCF coverage as an additional insured was in bad faith. In this regard, OCF also argued that Gray's contention that OCF could not prove fault on the part of Carriere-Stumm was frivolous, contending that "[t]here is clear evidence that [Mr.] Ladner (an employee of Carriere-Stumm) was solely at fault in causing his accident, because he went into an area that he had been prohibited from entering (the basement), and

he walked into an empty elevator shaft without looking." To this end, OCF asserted that the "L[C]AIA only prohibits provisions that require an indemnitor to indemnify, defend and hold harmless the indemnitee for loss or damage resulting from the negligence of the indemnitee" (here OCF)" but "[i]f the indemnitee is not at fault, there is no prohibition against such provisions."

***Carriere-Stumm's Motion for Summary Judgment and OCF's Opposition Thereto***

Like Gray, Carriere-Stumm also filed a motion for summary judgment, arguing that the provisions in the roofing contract between Carriere-Stumm and OCF (relied on by OCF in its "claim for contractual defense, indemnity, and additional insurance in the instant lawsuit") violate the LCAIA, which "prohibits defense and indemnity obligations." In its memorandum in support, Carriere-Stumm argued that the sole basis for its inclusion in Plaintiffs' lawsuit was for "defense, indemnity, and additional insurance allegedly owed to OCF for the claims asserted by Plaintiffs" because "Plaintiffs alleged that OCF is the sole negligent cause of Mr. Ladner's alleged injuries." Carriere-Stumm asserted that OCF's claims for defense, indemnity, and additional insurance were "rooted in null and void provisions" of the roofing contract, thereby warranting the grant of summary judgment in favor of Carriere-Stumm. Specifically, Carriere-Stumm asserted that the indemnification and insurance provisions in the roofing contract were unenforceable under the LCAIA because Gray and Carriere-Stumm were "being asked to defend and indemnify a negligence claim in which Plaintiffs allege that OCF (the indemnitee) is the sole negligent party." Carriere-Stumm further averred that OCF's demand that required it "to procure insurance coverage [was]

unenforceable because OCF [sought] insurance coverage as a result of its own alleged negligent 'acts or omissions.'"

Additionally, Carriere-Stumm argued that the exceptions to the LCAIA were inapplicable because they "do not apply when the contractor is required to maintain insurance at its own expense" and because, in this matter, "OCF did not pay an extra premium to be named as an additional insured under Carriere-Stumm's insurance policy." Furthermore, Carriere-Stumm contended that even if one of the exceptions to the LCAIA was applicable, it would only affect OCF's claims for coverage against Gray, and the provision in the roofing contract requiring defense and indemnification from Carriere-Stumm would still be unenforceable. Carriere-Stumm further insisted that it did not have to remain a party "to the extent [that] it is [ultimately] found 'partially at fault' as one of the L[C]AIA exceptions" allows a jury to assign a percentage of the fault to Carriere-Stumm, but "OCF would never be called upon to pay for Carriere-Stumm's fault." In the alternative, Carriere-Stumm argued that the trial court should find that OCF's claims against it for defense and indemnity, if valid, were premature, because OCF had not yet sustained any loss, i.e., the case had not concluded, nor had OCF paid a settlement to the Plaintiffs.

In opposition to Carriere-Stumm's Motion for Summary Judgment, OCF argued that the motion should be denied because the LCAIA "does not prohibit indemnity agreements where the indemnitor [here Carriere-Stumm] indemnifies the indemnitee [here OCF] for claims, damages, losses and expenses caused by the negligence of indemnitor or anyone directly employed by the indemnitor [here Mr. Ladner]." Further, OCF argued that the LCAIA does not prohibit such agreements when, as here, "there is a genuine dispute of material fact as to whether [Mr.]

14

Ladner's negligence caused or substantially contributed to his own accident," such that "the indemnity clause in the Carriere-Stumm-OCF contract [would be] valid and enforceable under Louisiana law."

OCF further argued that "the L[C]AIA does not prohibit agreements for defense and indemnity in the event and to the extent the Owner is not at fault, and fault rests with the Contractor," stating that in this matter Carriere-Stumm need only indemnify OCF "to the extent damage or loss is caused by the negligent acts or omissions of Carriere-Stumm and its employees." With regard to the insurance provisions, OCF averred that in the roofing contract, Carriere-Stumm had to obtain insurance on its indemnification obligation and Carriere-Stumm recovered the insurance cost in the 10% overhead portion of the contract price, thereby satisfying the La. R.S. 9:2780.1(I)(1) exception. Further, OCF asserted that because it alleged that through Mr. Ladner's actions Carriere-Stumm is either wholly or partially at fault for the Plaintiff's accident, the La. R.S. 9:2780.1(I)(2) exception is also satisfied. In particular, OCF argued that there remained a serious dispute regarding whether it either did anything or failed to do anything to cause or contribute to Mr. Ladner's accident, and whether, to the contrary Mr. Ladner and therefore, Carriere-Stumm were solely or comparatively at fault. OCF asserted that applying La. R.S. 9:2780.1(B) in this case simply means "that Carriere-Stumm need not indemnify OCF for OCF's negligence or intentional acts," but that "nothing prohibits Carriere-Stumm from indemnifying, defending and holding harmless OCF from actions of Carriere-Stumm or its employees such as [Mr.] Ladner." OCF additionally contended that the roofing contract's requirement for Carriere-Stumm to provide proof of insurance was permitted by La. R.S. 9:2780.1(C). Based on its argument that the previously-referenced provisions in the roofing contract were

15

within the LCAIA requirements, OCF asserted that the contract was enforceable. Lastly, OCF argued that its indemnity claim was not premature, provided "OCF has already been paying defense costs, so those losses have already been incurred and continue to mount up."

### OCF'S Motion for Partial Summary Judgment

As previously stated, OCF filed a Motion for Partial Summary Judgment against Gray, which is also at issue in Gray's writ application. In its motion, OCF moved for summary judgment on its cross-claims against Gray, asserting the same arguments from its opposition to Gray's Motion for Summary Judgment as summarized previously. In turn, Gray opposed OCF's Motion for Partial Summary Judgment on the basis of the arguments asserted in its own Motion for Summary Judgment as summarized previously.

### July 29, 2024, Judgment

After holding a hearing on the three motions for summary judgment and taking the matter under advisement, on July 29, 2024, the trial court issued a judgment. The judgment stated, in pertinent part:

> Considering the law, the evidence, and the testimony of the parties, this Honorable Court renders judgment as follows:
>
> **IT IS ORDERED, ADJUDGED, AND DECREED** that Defendant Ochsner Baptist Medical Center, L.L.C.'s *Motion for Partial Summary Judgment against The Gray Insurance Company by Ochsner Clinic Foundation* is **GRANTED**. Specifically, this court finds:
>
> • Gray breached its contract by failing to perform the duties it owed to OCF under its policy issued to Carriere-Stumm.
>
> • Alternatively, Gray is estopped from denying coverage and a defense to OCF
>
> • Gray's breach was in bad faith, violating L[a]. R.S. 22:1973

16

• Gray must immediately undertake the further defense of OCF in this case

• OCF is entitled to general and special damages caused by Gray's breach

• OCF is entitled to bad faith penalties under L[a.] R.S. 22:1973, the amounts to be determined at a later time.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Carriere-Stumm, L.L.C.'s *Carrierre-Stumm's Motion for Summary Judgment* is **DENIED**.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that The Gray Insurance Company's *Motion for Summary Judgment* is **DENIED**.

### *Motion for New Trial*

Subsequently, Gray filed a motion for new trial on two bases, asserting 1) that the trial court's July 29, 2024 judgment was contrary to the law and evidence (as to the application of the LCAIA, as well as, in finding that Gray breached its insurance contract; that estoppel was inapplicable; and that Gray was in bad faith and OCF is entitled to damages for same) and 2) that an amendment of the judgment was required to correct clerical errors (i.e., inaccurate statements as to the proper Ochsner party being granted relief and as to the counsel present during oral argument). Further, Gray sought a determination that the July 29, 2024 judgment was a final, appealable judgment. Substantively, Gray argued in its memorandum in support that its motion for new trial should be granted because the judgment "is contrary to the law and the evidence in the record in that [the] L[C]AIA is applicable in this matter and the obligation for additional insured coverage sought by OCF is null and void under Louisiana law."

17

***August 16, 2024, Judgment***

Thereafter, on August 16, 2024, the trial court held a hearing on Gray's Motion for New Trial, with the trial court orally denying the motion at the conclusion of the hearing. The trial court issued a judgment on the same date, August 16, 2024, amending the July 29, 2024 judgment, granting OCF's motion for summary judgment, and specifically finding that:

- Gray breached its contract by failing to perform the duties it owed to Ochsner Clinic Foundation under its policy issued to Carriere-Stumm.

- Alternatively, Gray is estopped from denying coverage and a defense to Ochsner Clinic Foundation

- Gray's breach was in bad faith, violating L[a]. R.S. 22:1973

- Gray must immediately undertake the further defense of Ochsner Clinic Foundation in this case

- Ochsner Clinic Foundation is entitled to general and special damages caused by Gray's breach

- Ochsner Clinic Foundation is entitled to bad faith penalties under L[a.] R.S. 22:1973, the amounts to be determined at a later time.

Additionally, the trial court denied the motions for summary judgment filed by Carriere-Stumm and Gray.

Gray and Carriere-Stumm then timely filed their writ applications with this Court. On September 5, 2024, Ochsner filed an Unopposed Motion to Consolidate 2024-C-0543 (the writ application filed by Gray) and 2024-C-0545 (the writ application filed by Carriere-Stumm), and this Court granted the motion on September 17, 2024.

18

## ASSIGNMENTS OF ERROR

The parties advance varying arguments as to why the LCAIA is or is not applicable to this matter. In general, Gray and Carriere-Stumm contend that enforcement of the indemnity, defense, and additional insured provisions in the roofing contract are prohibited pursuant to the LCAIA. In its writ application, Gray asserts four assignments of error. Specifically, it contends:

A. The [trial] court erred in denying Gray's Motion for Summary Judgment regarding the applicability of Louisiana's Anti-Indemnity Act

B. The [trial] court erred in granting OCF's Motion for Partial Summary Judgment regarding defense and indemnity

C. The [trial] court erred in granting OCF's Motion for Partial Summary Judgment on bad faith

D. The trial judge erred in denying Gray's Motion for New Trial

In its writ application, Carriere-Stumm asserts two assignments of error, namely:

1. The [trial] court erred when it denied Carriere-Stumm's Motion for Summary Judgment because the LCAIA prohibits defense and indemnity obligations in a construction contract seeking to defend and indemnify the negligence of the indemnitee.

2. The [trial] court erred when it denied Carriere-Stumm's Motion for Summary Judgment because the LCAIA prohibits additional insurance obligations in a construction contract when the indemnitee seeks coverage for its own alleged negligence.

In opposition, Ochsner contends that enforcement of the indemnity, defense and additional insured provisions in the construction contract are not prohibited by the LCAIA. Regarding the trial court's grant of OCF's Motion for Partial Summary Judgment, in its opposition to this Court, Ochsner contends that "[t]he [LCAIA] only prohibits indemnity provisions that require an indemnitor (here Carrière-Stumm) to indemnify, defend and hold harmless the indemnitee (here Ochsner) for loss or damage resulting from the negligence of the indemnitee" but

19

that "[i]f the indemnitee is not at fault, there is no prohibition against such provisions." Additionally, Ochsner states that "[u]ntil there is a determination as to the indemnitee's fault through a trial, a court may not void the indemnity provision." With regard to the additional insured provision, Ochsner asserts that the LCAIA "does not prohibit an indemnitor (Carrière-Stumm) from procuring insurance or naming the indemnitee (Ochsner) as an additional insured on its policies, if the indemnitor is at least partially at fault for the damages." Furthermore, Ochsner avers that the LCAIA "does not prohibit an indemnitor (Carrière-Stumm) from promising to indemnify, defend, or hold harmless the indemnitee (Ochsner), if the indemnitor is also required to obtain insurance therefore and the indemnitor recovers the cost of the insurance in the contract price." As to its argument that Gray has a duty to defend, Ochsner maintains that despite Gray's assertion that this determination must await trial, the insurer has a present obligation to defend Ochsner immediately (which is not precluded).

Before turning to the merits of these arguments, we begin our discussion with the standard of review and the principles applicable to the summary judgment procedure.

## DISCUSSION

### Summary Judgment Principles and Standard of Review

"The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action . . . ." La. C.C.P. art. 966(A)(2). It "is favored and shall be construed to accomplish these ends." *Id.* A trial court grants a motion for summary judgment if "[a]fter an opportunity for adequate discovery," the mover's "motion, memorandum, and supporting documents show

20

that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3).

The burden of proof on a motion for summary judgment "rests with the mover." La. C.C.P. art. 966(D)(1). Specifically, "[t]he party seeking summary judgment has the burden of proving there is no genuine issue of material fact." *Haynes v. Sewerage & Water Bd. of New Orleans*, 2023-0678, p. 13 (La. App. 4 Cir. 7/31/24), ___ So.3d ___, ___, 2024 WL 3593653, at *6 (quoting *LZM Props., LLC v. Priv. Connection Prop., Inc.*, 2023-0707, 0708, p. 14 (La. App. 4 Cir. 4/25/24), 390 So.3d 861, 871). This Court has previously explained that "'[a] genuine issue is' defined as 'a triable issue.'" *Id.* (quoting *LZM Props., LLC*, 2023-0707, 0708, p. 14, 390 So.3d at 872). More particularly, "an issue is genuine if reasonable persons could disagree" about it. *Id.* at pp. 14-15, ___ So.3d at ___, 2024 WL 3593653, at *6 (quoting *LZM Props., LLC*, 2023-0707, 0708, p. 15, 390 So.3d at 872). "[T]here is no need for a trial on [an] issue," however, if "reasonable persons could reach only one conclusion" after reviewing "the state of the evidence." *Id.* at p. 14, ___ So.3d at ___, 2024 WL 3593653, at *6 (quoting *LZM Props., LLC*, 2023-0707, 0708, p. 15, 390 So.3d at 872). A fact "whose 'existence or non-existence may be essential to the plaintiff's cause of action under the applicable theory of recovery'" is considered a material fact. *Id.* A material fact is further defined as one that "potentially insure[s] or preclude[s] recovery, affect[s] a litigant's ultimate success, or determine[s] the outcome of the legal dispute." *Id.* A court looks at "the substantive law applicable to the case" to determine if a particular disputed fact is material or not "because the applicable substantive law determines materiality." *Id.*

21

If the movant proves "that there is no genuine issue of material fact," thereby satisfying its initial burden of proof, at that point "the burden shifts to the party opposing summary judgment to present factual support sufficient to show he [or she] will be able to satisfy the evidentiary burden at trial." *Id.* at p. 14, ___ So.3d at ___, 2024 WL 3593653, at *7 (quoting *LZM Props., LLC*, 2023-0707, 0708, p. 15, 390 So.3d at 872). If the party moving for summary judgment "will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment," then "the mover's burden on the motion does not require him [or her] to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." La. C.C.P. art. 966(D)(1). Only once "the motion has been made and properly supported" does "the burden shift[] from the mover to the adverse party." *Haynes*, 2023-0678, p. 15, ___ So.3d at ___, 2024 WL 3593653, at *7 (quoting *LZM Props., LLC*, 2023-0707, 0708, p. 15, 390 So.3d at 872).

When the burden shifts, "the adverse party [must] produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." La. C.C.P. art. 966(D)(1). To produce such support, "[the] adverse party may not rest on the mere allegations or denials of his [or her] pleading, but his [or her] response, by affidavits or as otherwise provided . . . , must set forth specific facts showing that there is a genuine issue for trial." La. C.C.P. art. 967(B). In considering a motion for summary judgment, "the trial court cannot make credibility determinations but must construe reasonable factual inferences in favor of the party opposing the motion, resolving all doubt in favor of the opponent." *Haynes*, 2023-0678, p. 15,

___ So.3d at ___, 2024 WL 3593653, at *7 (quoting *LZM Props., LLC*, 2023-0707, 0708, p. 16, 390 So.3d at 872). Once the burden shifts, if the party opposing the motion fails to establish the existence of a genuine issue for trial, "summary judgment, if appropriate, shall be rendered against him [or her]."" La. C.C.P. art. 967(B). "This is because '[w]hen the party opposing the motion for summary judgment fails to provide factual evidence sufficient to establish that he [or she] will be able to satisfy his [or her] evidentiary burden of proof at trial, there is no genuine issue of material fact and summary judgment is appropriate.'" *Haynes*, 2023-0678, p. 15, ___ So.3d at ___, 2024 WL 3593653, at *7 (quoting *LZM Props., LLC*, 2023-0707, 0708, p. 16, 390 So.3d at 872).

On appeal, appellate courts review a trial court's ruling on a motion for summary judgment *de novo* and "use[] the same criteria that govern the trial court's determination of whether summary judgment is appropriate." *Id.* at p. 16, ___ So.3d at ___, 2024 WL 3593653, at *7 (quoting *LZM Props., LLC*, 2023-0707, 0708, p. 16, 390 So.3d at 872-73). That is, to answer whether summary judgment was appropriate, an "appellate court[] ask[s] the same questions the trial court does," particularly "whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law." *Id.* (quoting *LZM Props., LLC*, 2023-0707, 0708, pp. 16-17, 390 So.3d at 872).

Gray, Carriere-Stumm, and OCF each filed motions for summary judgment relating to the applicability of the LCAIA. As previously stated, the applicable substantive law determines materiality on a motion for summary judgment. Accordingly, we turn our discussion to the LCAIA's applicability to the contractual provisions at issue in the matter *sub judice*.

**Applicability of the LCAIA to the Roofing Contract**

*The Roofing Contract between OCF and Carriere-Stumm*

As this Court has stated, "[t]he words of a contract must be given their generally prevailing meaning." *Johnson v. Hamp's Constr., LLC*, 2017-0033, p. 8 (La. App. 4 Cir. 6/7/17), 221 So.3d 222, 227 (quoting La. C.C. art. 2047). "Moreover, '[e]ach provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole.'" *Id.* (quoting La. C.C. art. 2050). The roofing contract at issue in this matter is dated December 20, 2017, between OCF (the "owner") and Carriere-Stumm (the "contractor") for the "project" on the Ochsner Baptist Medical Center roofs, wherein OCF agreed to pay Carriere-Stumm $361,373,000 for performance of the contract. The applicable contractual provisions provide:

> 5 Indemnification and Insurance (a) To the fullest extent permitted by law and to the extent claims, damages, losses or expenses are not covered by insurance purchased by the Contractor in accordance, *the Contractor shall indemnify and hold harmless the Owner*, Architect, Architect's consultants and agents and employees of any of them *from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury*, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), *but only to the extent caused by the negligent acts or omissions of the Contractor, a Subcontractor, anyone directly or indirectly employed by them* or anyone for whose acts they may be liable, *regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified* hereunder[.] Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this section
>
> (b) Contractor shall at all times maintain the insurance coverage listed on Schedule 2

(Emphasis added).

Schedule 2 to the Construction Contract, the "Insurance Schedule," lists multiple insurance policies, including the coverage and limit for each. OCF is specifically named on the "Owners and Contractors Protective" policy. Additionally, with regard to the "Commercial General Liability" and "Umbrella Policies," the policies name "Owner as an additional insured" and includes "a waiver of subrogation in favor of Owner."

The addendum to the construction contract provides in Section 3, "Overhead and Profit," that the "Contractor agrees to charge, and accept, as payment for overhead and profit" certain "percentages of costs attributable to the change in the Work." It states in subpart (a) that "[w]hen all of the work is General Contractor work, ten percent (10%) of the cost of the work [is] for overhead and profit"; subparts (b) and (c) indicate different amounts for when it is Subcontractor or General Contractor and Subcontractor work combined; and subpart (d) provides that the "[t]otal overhead and profit shall not exceed fifteen percent (15%) of the cost of any portion of the work."

### The Louisiana (Construction) Anti-Indemnity Act ("LCAIA")

The above-cited contractual provisions must be interpreted in conjunction with La. R.S. 9:2780.1, known in this state's jurisprudence as the Louisiana (Construction) Anti-Indemnity Act, LCAIA. In pertinent part, it provides:

> B. Notwithstanding any provision of law to the contrary and except as otherwise provided in this Section, any provision, clause, covenant, or agreement contained in, collateral to, or affecting a motor carrier transportation contract or construction contract which purports to indemnify, defend, or hold harmless, or has the effect of indemnifying, defending, or holding harmless, the indemnitee from or against any liability for loss or damage resulting from the negligence or intentional acts or omissions of the indemnitee, an agent or employee of the indemnitee, or a third party over which the indemnitor has no control is contrary to the public policy of this state and is null, void, and unenforceable.

25

C. Notwithstanding any provision of law to the contrary and except as otherwise provided in this Section, any provision, clause, covenant, or agreement contained in, collateral to, or affecting a motor carrier transportation contract or construction contract which purports to require an indemnitor to procure liability insurance covering the acts or omissions or both of the indemnitee, its employees or agents, or the acts or omissions of a third party over whom the indemnitor has no control is null, void, and unenforceable. However, nothing in this Section shall be construed to prevent the indemnitee from requiring the indemnitor to provide proof of insurance for obligations covered by the contract.

. . . .

I. Nothing in this Section shall invalidate or prohibit the enforcement of the following:

(1) Any clause in a construction contract containing the indemnitor's promise to indemnify, defend, or hold harmless the indemnitee or an agent or employee of the indemnitee if the contract also requires the indemnitor to obtain insurance to insure the obligation to indemnify, defend, or hold harmless and there is evidence that the indemnitor recovered the cost of the required insurance in the contract price. However, the indemnitor's liability under such clause shall be limited to the amount of the proceeds that were payable under the insurance policy or policies that the indemnitor was required to obtain.

(2) Any clause in a construction contract that requires the indemnitor to procure insurance or name the indemnitee as an additional insured on the indemnitor's policy of insurance, but only to the extent that such additional insurance coverage provides coverage for liability due to an obligation to indemnify, defend, or hold harmless authorized pursuant to Paragraph (1) of this Subsection, provided that such insurance coverage is provided only when the indemnitor is at least partially at fault or otherwise liable for damages ex delicto or quasi ex delicto.

La. R.S. 9:2780.1(B)(C) and (I)(1)(2).

## Analysis

A "construction contract" is defined in the LCAIA as "any agreement for the design, construction, alteration, renovation, repair, or maintenance of a building, structure, . . . appurtenance, or other improvement to real property." La. R.S.

26

9:2780.1(A)(2)(a). Our review of the contract, which pertains to the performance of work on the roofs at Ochsner Baptist Medical Center, reveals that it is a construction contract, thereby triggering the applicability of the LCAIA. (We further note that the parties do not dispute that this is a construction contract.)

The LCAIA provides that any provision in a construction contract, which "purports to indemnify, defend, or hold harmless . . . the indemnitee from or against any liability for loss or damage resulting from the negligence or intentional acts or omissions of the indemnitee, an agent or employee of the indemnitee, . . . is contrary to the public policy of this state and is null, void, and unenforceable." La. R.S. 9:2780.1(B). Likewise, any provision in a construction contract, "which purports to require an indemnitor to procure liability insurance covering the acts or omissions or both of the indemnitee, its employees or agents, or the acts or omissions of a third party over whom the indemnitor has no control is null, void, and unenforceable." La. R.S. 9:2780.1(C). However, the LCAIA does not prohibit the enforcement of a clause in a construction contract, wherein the indemnitor promises to "indemnify, defend, or hold harmless the indemnitee or an agent or employee of the indemnitee if the contract also requires the indemnitor to obtain insurance to insure the obligation to indemnify, defend, or hold harmless and there is evidence that the indemnitor recovered the cost of the required insurance in the contract price." LA. R.S. 9:2780.1(I)(1). Further, the Act does not prohibit the enforcement of a clause in a construction contract that requires "the indemnitor to procure insurance or name the indemnitee as an additional insured on the indemnitor's policy of insurance, but only to the extent that the additional insurance coverage provides coverage for liability due to an obligation to indemnify, defend, or hold harmless authorized pursuant to [La. R.S.

27

9:2780.1(I)(1)], provided that such insurance coverage is provided only when the indemnitor is at least partially at fault." La. R.S. 9:2780(I)(2).

This Court has opined that the LCAIA "substantially mirrors" La. R.S. 9:2780, the Louisiana Oilfield Anti-Indemnity Act ("LOAIA"). *2700 Bohn Motor, LLC v. F.H. Myers Constr. Corp.*, 2021-0671, pp. 8-9 (La. App. 4 Cir. 4/20/22), 338 So.3d 500, 507. Therein, this Court noted that both of the statutes were "prompted by service providers who would otherwise be excluded from contracts, unless they absorbed the liability costs of the project owners." *Id.* at p. 9, 338 So.3d at 507 n.6. Bearing the foregoing in mind, and discussing indemnity agreements in relation to the LOAIA, the Louisiana Supreme Court has held "that such agreements are voided only to the extent that they purport to require indemnification and/or defense where there is negligence or fault on the part of the indemnitee; otherwise, they are enforceable just as any other legal covenant." *Fontenot v. Chevron U.S.A. Inc.*, 1995-1425, p. 9 (La. 7/2/96), 676 So.2d 557, 563 (citing *Meloy v. Conoco, Inc.*, 504 So.2d 833, 838 (La. 1987)). Further, this Court has stated with regard to the LOAIA "that a party which is solely or even concurrently negligent or at fault (strictly liable) as to a death or bodily injury may not enforce a contractual provision calling for it to be made [a]n additional assured on the other party's insurance policy (or receive the benefit of such additional assured status)." *Ridings v. Danos & Curole Marine Contractors, Inc.*, 1997-2710, pp. 5-6 (La. App. 4 Cir. 8/12/98), 723 So.2d 979, 982 (citations omitted). In *Ridings*, this Court held that an insurance provision in a contract was void only upon a determination that the entity (or its employees) seeking indemnification had sole or concurrence negligence or fault with regard to the plaintiff's injury. *Id.* at p. 5, 723 So.2d at 982 (citing *Fontenot*, 1995-1425, p. 9, 676 So.2d at 563 n.7; and

then citing *Meloy*, 504 So.2d at 838). Because that issue had not yet been determined in *Ridings*, the Court found that there remained a genuine issue of material fact as to the enforceability of the insurance provision included in the contract. *Id.* at pp. 6-7, 723 So.2d at 982.

Therefore, in the matter *sub judice*, the provision of the roofing contract, requiring Carriere-Stumm to indemnify OCF, "from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury…, but only to the extent caused by the negligent acts or omissions of" Carriere-Stumm or its employee (i.e. Mr. Ladner), "regardless of whether or not such claim, damage, loss or expense is caused in part by" OCF – is enforceable to the extent of Carriere-Stumm or its employee's negligence only. *See* La. R.S. 9:2780.1(B). Additionally, the requirement that Carriere-Stumm name OCF as an additional insured in its insurance policy with Gray is also enforceable to the extent that Carriere-Stumm promised to indemnify, defend, or hold harmless OCF if the contract required Carriere-Stumm to obtain the insurance and there is evidence that Carriere-Stumm recovered the cost of the insurance in the contract price, but only to the extent that coverage is only provided when Carriere-Stumm is at least partially at fault. *See* LA. R.S. 9:2780.1(I)(1)(2). OCF established in the trial court that either there was no additional charge to Carriere-Stumm to have the additional insured coverage; or, to the extent there was an increase in the premium for the additional insured coverage (an amount that could not be provided by Gray), the payment tendered to Carriere-Stumm by OCF for performance of the construction contract included a 10% charge for overhead, which included insurance cost, as testified to by Robert Stumm of Carriere-Stumm.

29

Therefore, like the requirement for Carriere-Stumm to indemnify, defend and hold harmless OCF, the additional insured coverage for indemnification and defense obligation is only enforceable to the extent of Carriere-Stumm or its employee's negligence. Because at this stage of the litigation there has not been a determination as to the fault of Carriere-Stumm or OCF, there remains a genuine issue of material fact as to the applicability of the LCAIA. As such, the trial court was correct in denying the motions for summary judgment filed by Gray and Carriere-Stumm.

Since there still remains a genuine issue of material fact, as to the applicability of the LCAIA, for the same reason the trial court was correct in denying the Gray's and Carriere-Stumm's Motions for Summary Judgment, the trial court also erred in granting OCF's Motion for Partial Summary Judgment against Gray relating to the applicability of the LCAIA. Ochsner acknowledges in its opposition that the fault of the parties must be determined during trial. However, although Ochsner states that OCF's fault as the indemnitee must be determined at trial before the indemnification provision can be voided by the trial court, it asserts that the statute does not prohibit an indemnitor, such as Carriere-Stumm, from procuring insurance for OCF or naming it as an additional insured, if the indemnitor is at least partially at fault. Nevertheless, just as there has not been a determination as to OCF's fault, there has not been a determination as to Carriere-Stumm's fault or that of its employee, Mr. Ladner.

Further, Ochsner maintains that Carriere-Stumm has a current duty to provide its defense, before trial, that is not precluded by the LCAIA. However, even if OCF established that the cost of the additional insured coverage was included in its payment under the construction contract, as stated above, under the

30

LCAIA, the additional insured coverage for the indemnification and defense obligation is only enforceable if Carriere-Stumm is at least partially at fault. So it stands to reason that Gray is not required to provide the coverage unless and until there is a determination that Carriere-Stumm was negligent. OCF asserted in the trial court that Gray's duty to defend arose based on the allegations in the petition. Generally, this is true under a liability insurance policy, but in causes of action for indemnification for cost of defense, the terms of the indemnity agreement govern and are limited under the LOAIA, or in this matter the LAIA. *See Meloy*, 504 So.2d at 838-839. Allegations in a petition are not dispositive of whether the indemnitee is due indemnification for defense costs. Instead, pursuant to *Meloy*, "the ultimate responsibility for defense costs in indemnity agreements is governed by the result rather than the allegations." *Johnson*, 2017-0033, p. 14, 221 So.3d at 230 (quoting *Berninger v. Georgia-Pac. Corp.*, 582 So.2d 266, 269 (La. App. 1st Cir. 1991)). The trial court erred in finding that Gray breached its contract by failing to perform its duties under the insurance policy issued to Carriere-Stumm and in ruling that Gray must immediately take up OCF's defense.

Further, Gray argues that the trial court erred in its finding of bad faith and asserts that the bad faith penalties authorized by statute, "do not stand alone" and "do not provide a cause of action against an insurer absent a valid, underlying, insurance claim." Therefore, Gray contends that the trial court erred as a matter of law in considering OCF's bad faith claim. In its opposition, Ochsner contends that Gray is liable for bad faith for refusing to comply with its policy obligations, stating that Gray's "refusal to defend Ochsner was arbitrary, capricious or without probable cause" and that similarly, Gray's "misrepresentation and denial of coverage to Ochsner, regardless of the circumstances or outcome of the

forthcoming trial, is also without probable cause." As such, Ochsner avers that the trial court properly found that Gray was in bad faith.

"The sanctions of penalties and attorney fees are not assessed unless a plaintiff's proof is clear that an insurer's failure to pay is arbitrary, capricious, or without probable cause." *Baack v. McIntosh*, 2020-01054, 1117, p. 15 (La. 6/30/21), 333 So.3d 1206, 1217 (citing *La. Bag Co. v. Audubon Indem. Co.*, 2008-0453, pp. 12-13 (La. 12/2/08), 999 So.2d 1104, 1113). With regard to bad faith, this Court has further explained that "[a]rbitrary, capricious, or without probable cause, as used in statutes allowing for penalties and attorney fees when an insurer fails to timely pay a claim is synonymous with vexatious, and a vexatious refusal to pay means unjustified, without reasonable or probable cause or excuse." *Feingerts v. La. Citizens Prop. Ins. Corp.,* 2018-0381, p. 5 (La. App. 4 Cir. 2/13/19), 265 So.3d 62, 67 (citing *Sher v. Lafayette Ins. Co.*, 2007-2441, p. 27 (La. 4/8/08), 988 So.2d 186, 206). Further, the Louisiana Supreme Court has stated that "when there are substantial, reasonable and legitimate questions as to the extent of an insurer's liability or an insured's loss, failure to pay within the statutory time period is not arbitrary, capricious or without probable cause." *La. Bag Co.*, 2008-0453, pp. 14-15, 999 So.2d at 1114). "Accordingly, '[t]he statutory penalties are inappropriate when the insurer has a reasonable basis to defend the claim and acts in good-faith reliance on that defense.'" *Baack*, 2020-01054, 1117, p. 15, 333 So.3d at 1217 (citing *Reed v. State Farm Auto. Ins. Co.*, 2003-0107, p. 13 (La. 10/21/03), 857 So.2d 1012, 1021).

Given Gray's reliance on the LCAIA, coupled with the fact that OCF's fault has not been determined to fully evaluate whether coverage to OCF under the statute is prohibited, we find that Gray had a reasonable basis to dispute coverage.

32

Therefore, the trial court erred in awarding bad faith penalties, which are inappropriate in this situation. *See Jones v. Gov't Emps. Ins. Co.*, 2016-1168, p. 12 (La. App. 4 Cir. 6/14/17), 220 So.3d 915, 924 (stating that "[i]t is settled law that when an insurer has a reasonable basis for defending a claim and acts in good-faith reliance on that defense, statutory penalties are inappropriate").

### *Denial of Gray's Motion for New Trial*

Gray also argues that the trial court erred in denying its Motion for New Trial. Gray asserts that the trial court's ruling denying its motion for new trial was premised on factual errors and legal errors, wherein the trial court orally indicated that OCF was a named insured, in contrast to the law and evidence and relied on public policy instead of applying the statute. Gray states that the trial court's "interpretation of [the] L[C]AIA makes its prohibition against indemnity clauses in construction and transportation contracts superfluous and meaningless." Based on our conclusion that the trial court did not err in denying Gray's Motion for Summary Judgment but did err in granting OCF's Motion for Partial Summary Judgment based on the applicability of the LCAIA, we need not consider whether the trial court erred in denying Gray's motion for new trial regarding that same judgment. *See LZM Props., LLC*, 2023-0707, 0708, p. 23, 390 So.3d at 876. That is, the issue germane to Gray's writ application is the same as the issue raised in its Motion for New Trial, specifically whether the trial court erred in its ruling on the parties' motions for summary judgment. We have already resolved that issue, therefore, we pretermit discussion of Gray's assignment of error regarding the trial court's denial of its Motion for New Trial.

33

## DECREE

For the foregoing reasons, we grant the consolidated writ applications; reverse the trial court's August 16, 2024, judgment insofar as it granted OCF's Motion for Partial Summary Judgment; affirm the trial court's denial of Gray's and Carriere-Stumm's Motions for Summary Judgment; and remand this matter for further proceedings.

**WRIT GRANTED; JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; REMANDED**